51 CCPA

**B. KUPPENHEIMER & CO., Inc.,**
Appellant

v.

**KAYSER–ROTH CORPORATION,**
Appellee.

Patent Appeal No. 7076.

United States Court of Customs
and Patent Appeals.

Jan. 23, 1964.

Thomas F. McWilliams, Mann, Brown & McWilliams, Chicago, Ill., for appellant.

Martin J. Beran, New York City (Alex Friedman, Blum, Moscovitz, Friedman, Blum & Kaplan, New York City, of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This is an appeal from the decision of the Patent Office Trademark Trial and Appeal Board, 134 USPQ 465, sustaining an opposition to an application by appellant, B. Kuppenheimer & Co., for the registration of

# Kuppenheimer
## SUP-PANTS

as a trademark for men's and boys' pants. Use of the mark in interstate commerce

---

by appellant on the designated goods since February 1959 is alleged.

Appellee, Kayser-Roth Corporation, is the registrant of **SUPP–HOSE** for hosiery.[1]

Mr. Austin Marvin Mark, assistant to appellee's vice president, testified that SUPP–HOSE was first used by a predecessor of appellee on August 12, 1957. He also testified that SUPP–HOSE is used in connection with women's stockings, supporting stockings and men's supporting socks, and that such goods are available in department stores and specialty shops throughout the country, and all over the world. It was further testified by Mr. Mark that the sales at the wholesale level of SUPP–HOSE hosiery, both men's and women's, has risen from approximately three hundred thousand dollars in 1957 to more than seven million dollars in 1960, while the sales at the retail level has risen from approximately five hundred thousand dollars in 1957 to more than thirteen million dollars in 1960. Mr. Mark testified that appellee has advertised SUPP–HOSE stockings at an aggregate cost in excess of five million dollars for the period from 1957 to 1961.

Appellant introduced by way of stipulation a photoprint of a typical advertising mat which is generally representative of the manner in which appellant has advertised products bearing its trademark. The photoprint employed and referred to the advantages of "SuP-Pants."

**Kuppenheimer SUP-PANTS**

The board in sustaining the opposition stated:

"While the marks of the parties must be considered in their entireties, it is apparent that the term 'Sup-Pants' in applicant's mark is a prominent feature thereof, and,

* * * it has been used in advertising as a product mark separate and apart from the house mark 'KUPPENHEIMER'. Applicant [appellant] contends that the mark 'Supp-Hose' is highly suggestive of the character of opposer's hosiery. However that may be, such a factor, in and of itself, would form no basis for holding that the term in question is a 'weak' mark. Moreover, in view of opposer's extensive advertising and promotion of its mark, there can be no question but that it must have had a pronounced effect on the purchasing public as an indication of origin of opposer's goods. Under all the circumstances, it is concluded that purchasers familiar with opposer's 'Supp-Hose' hosiery, upon encountering the mark 'KUPPENHEIMER Sup-Pants' on pants, would reasonably assume that such product was another of opposer's products or that opposer was in some way connected with the manufacture or sale thereof. Cf. Celanese Corporation of America v. E. I. du Pont de Nemours & Company [154 F.2d 143, 33 CCPA 857], 69 USPQ 69 (CCPA, 1946); * * *"

Appellant urges that KUPPENHEIMER is a well-known name in the men's clothing field and that there is no evidence in the record from which it may be concluded that purchasers seeing KUPPENHEIMER SUP–PANTS would believe that products bearing this trademark were in some way associated with the opposer. It is also argued by appellant that the board, notwithstanding its statement that the marks of the parties must be considered in their entireties, actually compared SUP–PANTS with SUPP–HOSE in reaching its decision. Appellant further emphasizes that the mark sought to be registered is the composite mark KUPPENHEIMER SUP–PANTS, and not SUP–PANTS alone. It is also appellant's position that the board

1. Reg. No. 665,788 issued Aug. 12, 1958 to a predecessor.

erred in concluding that SUP–PANTS is the prominent portion of applicant's trademark. Further, it urges that the board erred in considering that the expression SUP–PANTS is used independently of KUPPENHEIMER in advertising and apparently using that fact either to establish that SUP–PANTS is the predominant part of applicant's mark or that the Patent Office by granting the registration sought, would in some way sanction what the board may consider an infringing use.

Appellee, on the other hand, urges that SUP–PANTS is confusingly similar to SUPP–HOSE and that it is well settled that it is proper to consider separate portions of marks in order to consider the importance to be attached thereto. Appellee argues that the mere addition of appellant's house mark KUPPENHEIMER to the trademark SUP–PANTS is insufficient to negate this likelihood of confusion.

The trademark in issue here is not merely a house mark combined with another word. Appellant's mark is a combination of the house mark KUPPENHEIMER which is completely integrated with the other portion of the mark, i. e., the *same* double "P" is used in both KUPPENHEIMER and SUP–PANTS. This combination has characteristics that make it an indivisible symbol rather than two divisible words used together as a trademark. It could be said at first glance that one gets the impression that the double "P" "belongs" to the word KUPPENHEIMER and that the word KUPPENHEIMER dominates the mark. Obviously, the same principles of trademark law might not apply here as if the trademark involved words wherein a house mark is one word and the other portion is some other word complete in itself, and the house mark word is thus divisible from the other word or words in the mark.

Under these circumstances, and since the marks must be considered in their entireties, we believe that the concurrent use of appellant's mark on its goods and use of appellee's mark on its goods is not likely to result in confusion, deception or mistake even though we agree with the board that the articles of apparel, the goods of both parties, are so related that the use of marks having a close resemblance would be likely to cause confusion, deception or mistake. It immediately becomes apparent that the principles set forth in Celanese Corporation of America v. E. I. Du Pont De Nemours and Company, 154 F.2d 143, 33 CCPA 857, upon which the board relied in support of its opinion are not applicable to the factual situation here. In that case a majority of this court affirmed a decision of the Patent Office sustaining an appellee's opposition to the application of appellant for registration of the word "Clarifoil," printed in capital letters. The registered mark so relied upon by appellee is a composite mark consisting of the word "DuPont" arranged in an oval, below which oval is the notation "Clarapel." It was conceded that the contesting marks were applied to merchandise of the same descriptive properties, and the record disclosed that part of the merchandise was substantially identical. In that case this court said "while trademarks must be considered as a whole in determining the question of similarity, and while the name 'DuPont' may be more conspicuous in appellee's mark than 'Clar-apel,' nevertheless the public in making purchases of the goods would be likely to remember and use the word 'Clar-apel' as indicating origin of the goods. For that reason, 'Clar-apel' must be regarded as the dominant portion of appellee's mark." We think the factual situation before us distinguishes the instant case from the Celanese case since the two portions of the mark are completely integrated and not readily separable.

There is evidence that an advertisement of retailers carrying appellant's line uses SUP–PANTS alone, i. e.:

It is said,

"A Picture

Is Worth

Ten Thousand

Words . . ."

# Kuppenheimer
## SUP-PANTS

. . . but a thousand pictures cannot adequately describe the supreme comfort and untold advantages of SuP-Pants. Only a try-on can convince you of those. See for yourself this new trouser concept . . . how it improves your posture, trims your silhouette. And, SuP-Pants are "everKreased" for permanent crease retention.     From $60

AN INVESTMENT IN GOOD APPEARANCE

## SCHMITT-ORLOW
### Four Fine Stores

We cannot predicate our decision upon the wording of this advertisement. Our decision can properly be based only upon what the application shows as the trademark for which applicant wishes registration. If abuses develop in connection with the use of this mark, remedies are available to the abused. Also, we can conceive of a member of the public thinking of SUPP–HOSE when confronted with the trademark

# Kuppenheimer
## SUP-PANTS

or vice versa but that does not require that we hold that the trademarks that are actually in issue are likely to cause confusion, deception or mistake.

The respective marks are different in appearance, sound and meaning. The difference in meaning is found in the different purposes for which the parties use their respective marks. Appellant uses its mark to indicate that its garment is so constructed that outside support, such as a belt to hold up the pants of a wearer, is unnecessary, while appellee uses its marks to indicate that stockings will fit tightly around the legs of a wearer and have healthful effects.

In accordance with this analysis of the facts before us, we are compelled to reverse the decision of the board.

Reversed.

RICH, J., dissents.

SMITH, Judge (dissenting).

It seems to me the issue here turns on the likelihood of confusion, mistake or deception arising from applicant's use of its mark "SUP–PANTS" in view of opposer's mark "SUPP–HOSE." The majority arrives at its conclusion that such confusion, mistake or deception would not be likely by accepting appellant's position that the mark for which registration is sought is a composite mark in which applicant's well known mark "Kuppenheimer" is combined with the mark "SUP–PANTS" by means of the typographical design reproduced in the majority opinion in which the double

"p" in the mark "Kuppenheimer" is utilized to provide the double "p" in the mark "SUP–PANTS." However, I am unable to agree that the analysis of applicant's mark, upon which the majority. opinion is based, reflects the probable, and I think the expected, use of the mark in the market place.

The text of the advertisement of Schmitt-Orlow reproduced in the majority opinion states, "a thousand pictures cannot adequately describe the supreme comfort and untold advantages of SuP–Pants." The text of this advertisement also states: "And, SuP–Pants are 'ever-Kreased' for permanent crease retention." While I agree with the majority that our decision should not be predicated solely upon the wording of such an advertisement, I would, however, give it weight as some evidence of what seems to be the probable and expected use of the mark "SUP–PANTS," as an independent mark used to designate a particular product.

At the very least, the advertisement creates such doubt in my mind that I would resolve the doubt in favor of the position of opposer for two reasons: 1) Opposer used its mark "SUPP–HOSE" prior to applicant's use of its mark. The record shows opposer has been responsible for an aggressive and widespread merchandising and advertising campaign, the inevitable result of which, it seems to me, is that the vocabularies and habits of product identification of prospective purchasers have been conditioned to call for and identify such products as "SUPP–HOSE" or "SUP–PANTS." As I see it, the wording of the Schmitt-Orlow advertisement, to which previous reference was made, reflects and should be treated as some evidence of this effect of opposer's merchandising and advertising campaign. 2) There is likely very little purchaser identification of opposer's company name as the name of the source of its product "SUPP–HOSE." And, while applicant's mark proposes to tie its company name "Kuppenheimer" with the product "SUP–PANTS," the Schmitt-Orlow advertisement suggests that this effort when directed to the average purchaser is not likely to be wholly successful. Thus, it seems to me that a purchaser is encouraged to call for and purchase "SUP–PANTS." Such a purchaser might well do so in the honest but mistaken belief that "SUP–PANTS" and "SUPP–HOSE" were goods of the same manufacturer.

I would, therefore, affirm the decision of the Trademark Trial and Appeal Board.