DENA CORPORATION, Appellant,

v.

BELVEDERE INTERNATIONAL,
INC., Appellee.

No. 91–1156.

United States Court of Appeals,
Federal Circuit.

Dec. 4, 1991.

John M. Curtin, Leydig, Voit & Mayer, of Chicago, Ill., argued and James B. Muskal and Amy N. Cohen, Leydig, Voit & Mayer, Chicago, Ill., were on the brief, for appellant.

Donald L. Dennison, Dennison, Meserole, Pollack & Scheiner, of Arlington, Va., argued, for appellee.

Before MICHEL, PLAGER and RADER, Circuit Judges.

RADER, Circuit Judge.

In Opposition No. 81,365, Dena Corporation, opposer, appeals the Trademark Trial and Appeal Board's (Board) grant of summary judgment to applicant, Belvedere International, Inc. The Board found that Belvedere's mark—the words EUROPEAN FORMULA above a circular design—as applied to cosmetic products, is registrable as a unitary mark.

This court determines that the contested mark does not create a single commercial impression and, thus, the Board's holding to the contrary is erroneous. Because the Board's decision contains insufficient indication that it correctly considered the propriety of disclaimer under 15 U.S.C. §§ 1056 and 1057 (1988), this court vacates and remands.

## BACKGROUND

Belvedere filed an application to register this mark (words and circular design on a dark background *) on the Principal Register:

The examiner required Belvedere to disclaim the words EUROPEAN FORMULA due to their descriptiveness.

Upon the mark's publication in the Official Gazette, Dena filed an opposition to registration. Dena complained that the terms EUROPEAN FORMULA are "so highly descriptive that they are unable to function as a trademark." In response, Belvedere admitted that "the words EUROPEAN FORMULA by themselves are unable to function as a trademark." Nonetheless Belvedere asserted that its mark—the circular design and the words—"is a

---

* The Trademark Trial and Appeal Board noted that the applicant had not clarified whether its mark placed the words and circular design on a dark square or on a dark background. To avoid ambiguity, the Board recommended an amendment to show that the mark requires a dark background.

single unitary trademark creating a distinct commercial impression."

Dena filed a motion for summary judgment. Dena contended that Belvedere had admitted that the words EUROPEAN FORMULA were too descriptive to serve as a trademark. Belvedere answered that it had only meant to admit that the words had not, at the time of filing, become sufficiently distinctive to function as a trademark. Belvedere had only used the mark a few months before applying for registration.

At this point, the administrative proceeding became complex as the parties argued about the meaning of Belvedere's admission. Dena produced evidence that Belvedere had used EUROPEAN FORMULA separately from the design element of its mark. Dena also produced affidavits and other evidence showing that other beauty care marketers used the words "European Formula" descriptively. In addition to affidavits from experts suggesting widespread use of the words "European Formula" in the cosmetics industry, Dena produced a computer printout showing that a company called Natural Apple intends to release "in January" a "European Formula" styling mousse. Throughout these proceedings, Belvedere submitted no statements, affidavits, surveys, or other independent evidence of unitariness or registrability.

After several motions, the Board noted that if Belvedere's application—the design and words together—defines a single unitary mark then any descriptiveness of the disclaimed terms EUROPEAN FORMULA is irrelevant. Dena renewed its motion for summary judgment. Dena contended that Belvedere's mark is not unitary and argued for deletion of EUROPEAN FORMULA from the mark. Dena also urged the Board to refuse registration of the mark on the Principal Register because EUROPEAN FORMULA is incapable of functioning as a mark with the design. Dena again produced extensive evidence about the descriptiveness and unregistrability of EUROPEAN FORMULA. Belvedere opposed the motion, but proffered no rebutting evidence.

The Board denied Dena's motion for summary judgment and *sua sponte* granted summary judgment to Belvedere. The Board concluded that the words and design constitute a single mark. Dena appealed.

## ANALYSIS

The Federal Rules of Civil Procedure generally apply to Board proceedings. 37 C.F.R. § 2.116(1) (1988); *see also, Pure Gold, Inc. v. Syntex (U.S.A.),* 739 F.2d 624, 626–27, 222 U.S.P.Q. 741, 742–43 (Fed.Cir. 1984). The Board may grant a party summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, the Board may grant summary judgment to Belvedere only if the record evidence shows no remaining material factual dispute and Belvedere's entitlement to a legal ruling in its favor.

### Disclaimers

As early as 1920, the Supreme Court approved the United States Patent and Trademark Office's (PTO) policy of permitting applicants to disclaim unregistrable portions of composite marks. *Estate of P.D. Beckwith, Inc. v. Commissioner of Patents,* 252 U.S. 538, 40 S.Ct. 414, 64 L.Ed. 705 (1920). In *Beckwith,* the applicant's mark featured the words MOISTAIR HEATING SYSTEM on a circle which also enclosed an Indian head. Because the Court of Appeals of the District of Columbia had disapproved disclaimers, *Nairn Linoleum Co. v. Ringwalt Linoleum Works,* 46 App.D.C. 64 (1917), the Office requested deletion of the descriptive terms MOISTAIR HEATING SYSTEM.

On certiorari, the Supreme Court reversed the court of appeals' anti-disclaimer ruling. The Court stated that deletion of the descriptive portion of this composite mark could destroy the mark's commercial impression "in actual trade." *Beckwith,* 252 U.S. at 545–46, 40 S.Ct. at 416–17. Instead, the Court permitted the applica-

tion to proceed as long as the applicant claimed no exclusive rights in the descriptive words. Thus, to preserve the established commercial impression of the MOIS-TAIR mark, the Court permitted a disclaimer.

The Court of Customs and Patent Appeals also permitted disclaimers following the *Beckwith* decision. *In re American Cyanamid & Chem.*, 99 F.2d 964, 39 U.S.P.Q. 445 (CCPA 1938); *In re Effervescent Prods.*, 132 F.2d 142, 56 U.S.P.Q. 163 (CCPA 1942). This court's predecessor, however, did not permit disclaimers for every suspect composite mark. For instance, the court did not allow applicants to disclaim parts of a word. *In re American Steel & Wire Co.*, 81 F.2d 397, 28 U.S.P.Q. 348 (CCPA 1936) (Applicant sought to disclaim all but the letter "A" in "American."). Similarly, the court did not allow an applicant to disclaim all elements of a composite mark. *In re Midy Labs.*, 104 F.2d 617, 42 U.S.P.Q. 17 (CCPA 1939). The court regarded a disclaimer of all elements of a composite mark as an admission that the entire mark was descriptive and nonregistrable. *Andrew J. McPartland, Inc. v. Montgomery Ward & Co.*, 164 F.2d 603, 76 U.S.P.Q. 97 (CCPA 1947), *cert. denied*, 333 U.S. 875, 68 S.Ct. 904, 92 L.Ed. 1151 (1948).

After *Beckwith*, the Commissioner of Patents also denied registrations based on disclaimers in some instances. The Commissioner refused to permit applicants to register composite marks dominated by nonregistrable matter, even with a disclaimer of the nondistinctive portions. *Ex parte American Bearing*, 59 U.S.P.Q. 166 (Dec. Comm'r Pat. 1943). Thus, if the registrable portions of a mark were relatively insignificant next to the nonregistrable portions, a disclaimer would not cure the defect. *Ex parte Wells Lamont Smith Corp.*, 71 U.S.P.Q. 12 (Dec. Comm'r Pat. 1946); *Ex parte Commercial Solvents Corp.*, 71 U.S.P.Q. 106 (Dec. Comm'r Pat. 1946).

### The 1946 Lanham Act

In light of this background, the Lanham Act included section 6 on disclaimers. The 1946 Act stated:

> The Commissioner shall require unregistrable matter to be disclaimed, but such disclaimer shall not prejudice or affect the applicant's or owner's rights then existing or thereafter arising in the disclaimed matter, nor shall such disclaimer prejudice or affect the applicant's or owner's rights of registration on another application of later date if the disclaimed matter has become distinctive of the applicant's or owner's goods or services.

15 U.S.C. § 1056 (1946) (citation omitted). The Court of Customs and Patent Appeals determined that this enactment codified existing disclaimer practice:

> A study of the legislative history of the 1946 Act convinces us that the part of section 6 stating "The Commissioner shall require unregistrable matter to be disclaimed, * * * " is essentially declaratory of the disclaimer practice as then existing under the sanction of the Beckwith decision.

*In re Hercules Fasteners*, 203 F.2d 753, 756, 97 U.S.P.Q. 355, 357 (CCPA 1953).

Under the Act, for instance, the Commissioner continued to refuse registration, despite disclaimers, to composite marks dominated by nonregistrable matter. *Phillips Petroleum Co. v. L.P.G. Equip.*, 78 U.S.P.Q. 212 (Dec. Comm'r Pat. 1948). The 1946 Act, in effect, incorporated this aspect of disclaimer practice. Thus, the Act continued to prevent an applicant from registering a mark simply by combining a nonregistrable symbol with another nondescript and insignificant element.

In the mid–1950s, the PTO recognized that an applicant need not disclaim an element of a single unitary mark. *"X" Labs. v. Odorite Sanitation Serv.*, 106 U.S.P.Q. 327 (Dec. Comm'r Pat. 1955) (disclaimer unnecessary for "tire" in TIRE–X); *Humko Co. v. Favia*, 103 U.S.P.Q. 239 (Dec. Comm'r Pat. 1954); *Canada Dry Ginger Ale v. Lipsey*, 102 U.S.P.Q. 447 (Dec. Comm'r Pat.1954) (disclaimer unnecessary for "Canadian" in ROYAL CANADIAN). In essence, the Commissioner reasoned that a descriptive element in some marks may lose its descriptive significance if inte-

grated with other arbitrary terms. In such a mark, the descriptive and nondescriptive elements are "so merged together that they cannot be regarded as separable elements." *In re EBS Data Processing*, 212 U.S.P.Q. 964, 966 (TTAB 1981) (disclaimer required for "pocket profile" in PHACTS POCKET PROFILE). The Board explained that a unitary mark avoids the disclaimer requirement "where a descriptive term is combined with a non-descriptive term so as to form a mark which has a distinct non-descriptive meaning of its own as a whole." *Id.* (citation omitted).

In the wake of the 1946 Act, the Commissioner also recognized that removal, rather than disclaimer, may best cure nonregistrable elements of a composite mark which are entirely separate and removable from the whole. *In re Tradio, Inc.*, 75 U.S.P.Q. 146 (Dec. Comm'r Pat. 1947). Particularly when the entirely separate and removable element is a generic name, the Board required deletion. *In re Kimberly–Clark Corp.*, 121 U.S.P.Q. 590 (TTAB 1959) (removal of "erasable bond" required from NEENAH ERASABLE BOND). In any event, the primary test for deletion was whether the nonregistrable element was "so far removed physically from the rest of the alleged composite mark as to appear as separate and removable." *Tradio*, 75 U.S.P.Q. at 147. The Court of Customs and Patent Appeals clarified that, with respect to a composite design mark, disclaimer may be preferable to deletion. *In re Franklin Press*, 597 F.2d 270, 201 U.S.P.Q. 662 (CCPA 1979).

### The 1962 Amendment

In 1962, Congress revamped the 1946 Act's disclaimer section:

> The Commissioner may require the applicant to disclaim an unregistrable component of a mark otherwise registrable. An applicant may voluntarily disclaim a component of a mark sought to be registered.
>
> No disclaimer, including those made under subsection (e) of section 1057 of this title, shall prejudice or affect the applicant's or registrant's rights then existing or thereafter arising in the disclaimed matter, or his right of registration on another application if the disclaimed matter be or shall have become distinctive of his goods or services.

15 U.S.C. § 1056(a), (b) (1988) (citations omitted).

> Upon application of the registrant and payment of the prescribed fee, the Commissioner for good cause may permit any registration to be amended or to be disclaimed in part; *Provided*, That the amendment or disclaimer does not alter materially the character of the mark.

15 U.S.C. § 1057(e) (1988) (emphasis in original). Besides deleting some cumbersome language, the 1962 amendment also substituted "may" for the mandatory "shall" of the 1946 version. This amendment gave the Commissioner more flexibility in implementing disclaimer policies. The 1962 amendment also allowed applicants to disclaim voluntarily.

Once again, however, the 1962 amendment did not depart from existing disclaimer policy. Throughout the legislative history of the 1962 amendment, Congress indicated its intent to clarify and codify existing practices. The Senate report on the legislation, also quoted on the floor during debate, stated:

> [T]he instant bill is in large part a housekeeping measure, making minimal substantive changes in the trademark law.... This bill has been termed as a "housekeeping" bill and was considered to be not controversial.

S.Rep. No. 2107, 87th Cong., 2d Sess. 2–3 (1962), *reprinted in* 1962 U.S.C.C.A.N. 2844, 2845; 87 Cong. Rec. 20,455 (1962). As the Senate report stated at one point, Congress rejected proposals for substantive changes in the 1962 bill because it intended to do "nothing more than codify the present practice of the Patent Office." *Id.* In this climate of minimal change, Congress cleaned up, in housekeeping fashion, the Lanham Act's disclaimer provision and codified existing disclaimer practices.

### The language of section 1056(a)

█ In its 1962 amendment, Congress carefully chose language to codify the traditional PTO disclaimer practice. The language of the disclaimer provision sets forth clearly the general rule governing composite marks. Under the Lanham Act, an applicant with an "otherwise registrable" composite mark may, by disclaimer, avoid rejection due to an "unregistrable component" of the mark. 15 U.S.C. § 1056(a); *see also, C.R. Bard, Inc. v. Foley Bag Catheter, Inc.*, 394 F.2d 582, 157 U.S.P.Q. 579 (CCPA 1968). A disclaimer shows that the applicant enjoys no exclusive rights to the disclaimed symbols apart from the composite mark. *United States Steel Corp. v. Vasco Metals Corp.*, 394 F.2d 1009, 157 U.S.P.Q. 627 (CCPA, 1968).

The Lanham Act's disclaimer requirement strikes a statutory balance between two competing trademark principles. On the one hand, it provides the benefits of the Lanham Act to applicants for composite marks with unregistrable components. On the other hand, the Act prevents an applicant from claiming exclusive rights to disclaimed portions apart from composite marks. The applicant's competitors in the same trade must remain free to use descriptive terms without legal harassment. *DeWalt, Inc. v. Magna Power Tool*, 289 F.2d 656, 662, 129 U.S.P.Q. 275, 281 (CCPA 1961). By encouraging definition of the rights claimed in a composite mark, the Act discourages unnecessary litigation. *Id.*

█ Moreover, the language of 15 U.S.C. §§ 1056 and 1057 incorporated the various aspects of traditional disclaimer practice. For example, section 1056(a) adopts the Commissioner's policy of exempting unitary marks from the disclaimer requirement. *See, e.g., EBS Data*, 212 U.S.P.Q. at 964. A unitary mark simply has no "unregistrable component," but is instead an inseparable whole. A unitary mark cannot be separated into registrable and nonregistrable parts. Because unitary marks do not fit within the language of section 1056(a), the Commissioner cannot require a disclaimer.

█ Similarly, under traditional disclaimer practice, an applicant could not disclaim all elements of a composite mark. Section 1056(a) codified this policy. A mark which must be entirely disclaimed has no "unregistrable component," but is instead entirely nonregistrable. In other words, a mark which must be entirely disclaimed has no "otherwise registrable" parts. Therefore, such marks do not qualify as composite marks for which the Commissioner may require a disclaimer.

█ Under traditional disclaimer practice, an applicant with a mark whose nonregistrable component was the most prominent or dominant feature—in effect imparting nonregistrable meaning to the entire mark—could not acquire registration by disclaimer. In other words, an applicant could not win registration by attaching an insignificant element to a nonregistrable mark. Once again, the language of section 1056(a) codified this traditional rule. Such a mark, in effect, has no "unregistrable component" because the dominant feature of the mark extends a nonregistrable meaning to the whole. The entire mark becomes nonregistrable.

█ Finally, under historic disclaimer practice, an applicant for a mark with an entirely separate and removable nonregistrable component—usually a generic name—was often ordered to remove the nonregistrable component. *See, e.g., In re Automotive Filters, Inc.*, 168 U.S.P.Q. 186 (TTAB 1970); *In re Magic Muffler Serv.*, 184 U.S.P.Q. 125 (TTAB 1974). Here again, under the language of section 1056(a), such a mark may lack an "unregistrable component," but may instead purport to include something entirely separate. In such a mark, the nonregistrable aspect is not a component of the mark at all. In sum, the history of disclaimer practice reveals the parameters of what Congress codified in the 1946 and 1962 Acts.

Under sections 1056 and 1057, if an applicant seeks to disclaim "an unregistrable component of a mark otherwise registrable," then the Commissioner has discretion to permit a disclaimer. 15 U.S.C. §§ 1056, 1057. The Board must first determine

whether an applicant seeks to disclaim the "unregistrable component of a mark otherwise registrable." To make this determination, the Board must consider the various aspects of traditional disclaimer practice included within the disclaimer provisions of Title 15.

### Belvedere's mark

■ The Board erred in concluding that Belvedere seeks to register a unitary mark. A unitary mark has certain observable characteristics. Specifically, its elements are inseparable. In a unitary mark, these observable characteristics must combine to show that the mark has a distinct meaning of its own independent of the meaning of its constituent elements. In other words, a unitary mark must create a single and distinct commercial impression. This test for unitariness requires the Board to determine "how the average purchaser would encounter the mark under normal marketing of such goods and also ... what the reaction of the average purchaser would be to this display of the mark." *Magic Muffler*, 184 U.S.P.Q. at 126. The Trademark Manual of Examining Procedure (TMEP) sets forth several factors to assist in making this determination:

> whether it is physically connected to the mark by lines or other design features; how close the matter is located to the mark and whether side by side on the same line; the meaning of the words and how the meaning relates to each other and to the goods....

TMEP § 807.13(a) (rev. 1986).

■ In this case, this court cannot uphold the Board's determination that Belvedere's mark is unitary. An examination of the mark discloses that its elements are not so merged together that they cannot be regarded as separate. *See EBS Data*, 212 U.S.P.Q. at 966. The words EUROPEAN FORMULA are separate from the circular design. These two elements are not connected by any lines or design features. In *Kuppenheimer & Co v. Kayser–Roth Corp.*, 326 F.2d 820, 140 U.S.P.Q. 262 (CCPA 1964), for instance, the two elements of the mark—KUPPENHEIMER

and SUPPANTS—shared the same double "P." Thus, the mark became an "indivisible symbol rather than two divisible words." *Kuppenheimer*, 326 F.2d at 822, 140 U.S.P.Q. at 263. Nothing melds EUROPEAN FORMULA with the circular design to create a single indivisible symbol.

In addition, no particular meaning in the words EUROPEAN FORMULA or the circular design links these detached features. Belvedere presents no evidence about the meaning of these features. Moreover, the dark background does not join the two disparate elements. In this case, the background may be merely the color of the product label on which Belvedere proposes to display its mark. The observable characteristics of Belvedere's mark show that its elements are not "so merged together that they cannot be regarded as separable elements." *EBS Data*, 212 U.S.P.Q. at 966.

The mere proximity of EUROPEAN FORMULA to the unrelated design feature does not endow the whole with a single, integrated, and distinct commercial impression. No evidence suggests that a potential purchaser would perceive this mark to convey a single inseparable impression. In the absence of such evidence, EUROPEAN FORMULA in large type appears to stand out and convey a meaning wholly unrelated to the circular design.

Viewing the mark in its entirety, as it must, this court determines that Belvedere does not seek registration of a unitary mark. The Board erred in concluding that Belvedere's mark was unitary. Therefore, the Board erred in granting Belvedere summary judgment.

■ The Board also did not determine whether Belvedere seeks to disclaim "an unregistrable component of a mark otherwise registrable." For example, the Board has yet to consider whether EUROPEAN FORMULA dominates the mark enough to impart a nonregistrable meaning to the whole. Nor has the Board yet considered whether EUROPEAN FORMULA is entirely separate from the rest of the mark.

**1562**

The record shows that Dena has properly raised both of these issues. Dena contends that Belvedere's mark is so highly descriptive that it is incapable of performing as a trademark. Dena's contention fairly raises the question of whether the descriptive portion of Belvedere's mark dominates the mark enough to preclude disclaimer. Moreover, Dena presented unrebutted evidence in support of this contention.

The record also shows that Dena requested deletion of EUROPEAN FORMULA from Belvedere's mark. In support, Dena presented evidence that Belvedere itself displayed EUROPEAN FORMULA separate from the circular design. This unrebutted evidence raises the question of whether the descriptive portion of Belvedere's mark is sufficiently separate from the rest of the mark to be removable.

### CONCLUSION

Because the Board erred in concluding that Belvedere's mark is unitary, its grant of summary judgment is improper. Because the Board found the mark to be unitary, it did not determine whether the mark qualifies under sections 1056 and 1057. Thus, this court must vacate and remand. On remand, the Board—itself constrained by the procedural posture of this case in its initial hearing—will have an opportunity to discern whether Belvedere's mark qualifies to invoke the disclaimer provisions. In any event, Belvedere has not shown its mark to be unitary.

VACATED AND REMANDED.