PILATES, INC. Plaintiff,

v.

GEORGETOWN BODYWORKS DEEP MUSCLE MASSAGE CENTERS, INC, a/k/a Georgetown Bodyworks Fitness Centers, Inc., and Willard A. Green, Individually Defendants.

Willard A. Green Defendant and Counterplaintiff,

v.

Pilates, Inc. Plaintiff and Counterdefendant.

No. 95–1771.

United States District Court, District of Columbia.

Aug. 7, 2001.

---

Andrew Multer, Larry B. Miller, Pilates, Inc., New York, NY, Kenneth Bressler, Kalow, Springut and Bressler, New York, NY, and Joshua Kaufman, Tucker Flyer, P.C., Washington, DC, for Pilates, Inc.

Daniel A. Ball, Lewis, Goldberg & Ball, A professional Corporation, McLean, VA, for Georgetown Bodyworks Deep Muscle Massage Centers, Inc.

## MEMORANDUM OPINION

KAY, United States Magistrate Judge.

Pending before this Court is Defendant/Counterplaintiff Willard Green's Supplemental Motion for Summary Judgment ("Motion") [102], Plaintiff/Counterdefendant Pilates, Inc.'s opposition thereto ("Opposition")[103], and Defendant/Counterplaintiff Willard Green's reply ("Reply") [104]. Plaintiff Pilates, Inc. (hereinafter "Plaintiff" or "Pilates, Inc."), in its Complaint, alleged entitlement to trademark protection for the PILATES marks for exercise instruction services [Registration No. 1,405,304] and equipment [Registration No. 1,907,447], and the PILATES STUDIO mark [Registration No. 1,602,-929] (collectively, the "Marks"). Plaintiff initiated a civil action against Defendant Willard Green (hereinafter "Defendant" or "Mr. Green"), who was the proprietor and/or manager of Defendant Georgetown Bodyworks Deep Muscle Massage Centers, Inc. d/b/a Georgetown Bodyworks Fitness Centers, for an alleged infringement of the Marks and unfair competition under Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. § 1114 and § 1125(a). Mr. Green, in turn, filed a counterclaim for damages and declaratory relief against Pilates, Inc., requesting a determination that the Marks were invalid and should therefore be cancelled, and further urging the Court to award reimbursement of his attorneys' fees.

On October 19, 2000, Judge Miriam Cederbaum of the United States District Court for the Southern District of New York issued a Memorandum Opinion in *Pilates, Inc. v. Current Concepts*, 120 F.Supp.2d 286 (S.D.N.Y.2000), a case also involving Plaintiff Pilates, Inc. and alleging infringement of two of the PILATES trademarks [for exercise instruction services and exercise equipment]. Judge Cederbaum invalidated the two trademarks, holding that: 1) both marks were generic; 2) if there was a PILATES equipment trademark, it had been abandoned long before Plaintiff applied for its registration, and its registration was obtained by Plaintiff through fraud; and 3) the PILATES exercise instruction services mark was invalidly assigned in gross.[1]

In the instant case, Plaintiff Pilates, Inc. and Defendant Willard Green agree that the two PILATES marks at issue in the *Current Concepts* case are no longer contested since they have been cancelled by the United States Patent and Trademark Office ("PTO"). Defendant contends however that Pilates, Inc. is still enforcing its use of the PILATES STUDIO mark and

---

1. Pilates, Inc. agreed to surrender the PILATES service and equipment marks, and to forego an appeal of the Court's decision in *Current Concepts. See* Memorandum in Support of Motion at Exhibit 8, December 1, 2000 Settlement Agreement. The *Current Concepts* defendants also challenged the PILATES STUDIO mark but Judge Cederbaum determined that defendants lacked standing to contest the mark since they never used the name Pilates Studio not did they intend to use such name. Furthermore, plaintiff did not sue defendants for infringing the PILATES STUDIO mark; thus, there was no justiciable case or controversy with respect to that mark. *Current Concepts,* 120 F.Supp.2d at 289–90, n. 2 (citations omitted).

thus, that mark remains disputed between Pilates, Inc. and Mr. Green. Defendant asserts that the PILATES STUDIO mark should be cancelled because Plaintiff's disclaimer of the term "PILATES" in a requested amended registration of the "PILATES STUDIO" mark creates an invalid non-registrable mark.[2]

Upon consideration of the memoranda and exhibits submitted in connection with this Motion, the opposition thereto, and oral argument having been held on April 24, 2001, for the reasons set forth below, the Defendant's Motion is granted.

## I. BACKGROUND [3]

In or around 1914, Joseph Pilates developed a method of conditioning incorporating specific exercises designed to strengthen the entire body, and enhance flexibility. Mr. Pilates also developed numerous pieces of equipment for use in connection with the exercises. In the mid–1920's, Mr. Pilates and his wife, Clara, emigrated to the United States and opened an exercise studio in New York City. Between 1927 and 1951, Mr. Pilates obtained patents for several pieces of the exercise equipment he had invented.

In 1965, Mr. Pilates opened a studio in the beauty salon at Henri Bendel, a department store in New York City, where he taught his Pilates method of conditioning. Mr. Pilates taught a number of students who went on to become Pilates instructors themselves. Mr. Pilates died in 1967; his wife continued to teach at and run the studio until 1970.

On March 3, 1970, John Steel, an attorney representing Mrs. Pilates, formed a New York corporation called 939 Studio Corporation ("939 Studio") for the purpose of owning and operating the studio at which Mr. and Mrs. Pilates had taught, and providing financial support for Mrs. Pilates. In September 1971, Mr. Steel formed a limited partnership, between 939 Studio [general partner] and approximately 20 investors [limited partners], which then purchased the assets of the studio from Mrs. Pilates. On June 4, 1973, 939 Studio changed its name to Pilates Studio, Inc. (the "first Pilates Studio, Inc."). That same year, Romana Kryzanowska, who had trained and studied with Mr. and Mrs. Pilates, became a 50% shareholder of the first Pilates Studio, Inc. The remaining shares were owned by the limited partners of 939 Studio.

Mrs. Pilates died in 1976. In 1984, the first Pilates Studio, Inc.'s assets were sold to Aris Isotoner Gloves, Inc. ("Aris Isotoner") in an agreement dated August 14, 1984. The assignment provided for the transfer of the marks PILATES [exercise instruction services] and PILATES STUDIO. The assignment did not mention a PILATES trademark for exercise equipment.

On December 30, 1986, Aris Isotoner transferred all assets related to its Pilates business for $15,000 to Healite, Inc., which was wholly-owned and operated by Mr. Wee–Tai Hom. A separate assignment of the PILATES [exercise instruction services] and PILATES STUDIO trademarks was executed on the same day, with no mention of the equipment trademark. On

---

**2.** Defendant Green filed a previous motion for summary judgment, prior to the *Current Concepts* decision, addressing all three marks. This "Supplemental" Motion for Summary Judgment, addressing the only remaining mark, will be treated as independent of that motion, which should be withdrawn as moot.

**3.** Much of the information in the background section is liberally borrowed from the *Current Concepts* decision.

January 6, 1987, Healite relocated the first Pilates Studio, Inc. to a different New York City address, and also incorporated another [second] Pilates Studio, Inc., which was a wholly-owned subsidiary of Healite. On April 1, 1989. Healite closed the first Pilates Studio, Inc.[4] Wee–Tai Hom sent [the first] Pilates Studio clients a letter referring them to three other exercise facilities and he received a small fee for such referrals. Used equipment from the [first] Pilates Studio was also distributed among these three facilities.

### Plaintiff Pilates, Inc.

Sean Gallagher, who would later form Plaintiff Pilates, Inc., acquired the trademark registrations for the PILATES mark [exercise instruction services ] and the PILATES STUDIO mark for $17,000, from Wee Tai–Hom, under an asset purchase agreement effective August 3, 1992. The agreement did not mention a trademark for equipment. Gallagher also acquired the studio's archives, including photographs, books and documents, and client lists, the majority of which were discarded by him.

Mr. Gallagher incorporated Pilates, Inc. in 1992; he is the President and sole shareholder of Plaintiff corporation. Plaintiff's business includes providing instruction in the Pilates method of exercise; training Pilates instructors; and selling Pilates equipment and merchandise. In June 1994, Gallagher assigned the PILATES STUDIO trademark to Pilates Inc., which is now the registered holder[5] Plaintiff has vigorously enforced the Pilates Marks since it acquired them. Plaintiff has sent hundreds of cease and desist letters to purported infringers and has sued for trademark infringement in several other cases.

### Defendant Willard Green

Since 1982, Defendant Willard Green, in the course of his business of physical conditioning and exercise instruction, has used the name "Pilates" in the Washington, D.C. metropolitan and Roanoke, Virginia areas. In 1988, Defendant Green relocated to Washington, D.C. and opened Georgetown Bodyworks Fitness Centers. Green offered services in the Pilates method of exercise during the early 1990's. Even after Pilates, Inc. sent a "cease and desist" letter to Mr. Green in 1995, Green continued to use the name "Pilates" to advertise and to offer to the public services in the Pilates method of exercise.

Plaintiff commenced this trademark infringement action in 1995. Mr. Green failed to respond to the Complaint and a default judgment was entered on November 30, 1995. Mr. Green then appeared *pro se* at a hearing on damages on December 12, 1995 and informed the Court that the Defendant, Georgetown Bodyworks (of which he was sole proprietor) had been out of business since 1994 and that he was not then using the Pilates Marks. This Court entered an Order on January 2, 1996, enjoining Defendant from using the Marks in commerce, or from infringing on the Marks in any other way. The default judgment was later vacated and the case proceeded in this Court, with related proceedings in the Southern District of New York. After summary judgment was entered against Pilates, Inc. in New York,

---

4. It appears that the second studio never physically existed, other than on paper. Neither Healite nor the second Pilates Studio, Inc. filed any federal income tax returns from 1988 through 1993.

5. The PILATES mark for exercise instruction services was also assigned. Mr. Gallagher also applied for a trademark registration for PILATES, for use on exercise equipment. which was eventually granted, after a denial in March 1994.

and the time for an appeal passed. Mr. Green filed the instant motion for summary judgment.

## II. LEGAL STANDARD

A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994) Although a court should draw all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The adverse party's pleading must demonstrate the existence of a genuine issue of material fact. *See id.* at 248, 106 S.Ct. 2505. To be genuine, the issue must be supported by sufficiently admissible evidence such that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation. *See id.; see also Laningham v. U.S. Navy*, 813 F.2d 1236, 1242–43 (D.C.Cir.1987).

Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment. The nonmoving party bears the affirmative duty to present, by affidavits or other means, specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505. The adverse party must do more that simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industriesal*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. ANALYSIS

### A. Justiciable Case or Controversy

As a preliminary matter, Plaintiff argues that there is no case or controversy as to the PILATES STUDIO mark because Mr. Green's counterclaim did not seek declaratory relief as to the mark and Mr. Green is no longer infringing on the mark. *See Northeastern Florida Chapter of the Associated Gen. Contractors of America v. City of Jacksonville, Florida*, 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) (In order to establish a "case or controversy", the defendant must show that it has (1) suffered or will imminently suffer an injury, which is (2) fairly traceable to plaintiff's conduct and which is (3) likely to be redressed by a favorable federal ruling.) *See also Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (The constitutionally mandated " 'case-or-controversy requirement subsists through *all* stages of federal judicial proceedings, trial and appellate... The parties must continue to have a personal stake in the outcome of the lawsuit.' ") (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) (emphasis added)). Plaintiff asserts that "[s]ince both sides agree that all claims regarding the exercise and equipment marks are moot, and since the PILATES STUDIO mark is not justiciable, this case should be dismissed." Opposition at 6.

Defendant Green argues that the PILATES STUDIO mark is at issue in the Amended Complaint, as well as in the Answer and Counterclaim. Memorandum in Support of Motion at 7. *See also id.* at Exhibit 6, ¶ 1 (stating that "[t]he trademarks at issue are PILATES and PILATES STUDIO (the 'Pilates Marks')."); *see also* Answer and Counterclaim (stating

at page 15 that "[d]eclaratory relief will resolve ongoing disputes regarding the trademarks at issue, PILATES and PILATES STUDIO (the 'Pilates Marks').") [6]

Defendant further asserts that he involuntarily abandoned his use of the word "Pilates" because this Court entered a Default Judgment against him on November 17, 1995 and a subsequent Order dated January 2, 1996. After the Court vacated its Default Judgment and Order, Defendant Green resumed his use of the word "Pilates." Memorandum in Support of Motion at 4. Furthermore, since the conclusion of the *Current Concepts* litigation, in which the court declared "PILATES" to be generic, Mr. Green has resumed building his Pilates business. *See* Memorandum in Support of Motion at Exhibit 5, Affidavit of Willard Green. He has resumed using Pilates in commercial advertisements and the promotion of his business and he has installed a sign on the front door of Georgetown Bodyworks, in Washington, D.C., that reads "Will Green's Pilates Studio" *See id.* at Tab A.

Mr. Green additionally operates a studio in Warrenton, Virginia, where he has a home and office and he has installed a sign there that reads, "Will Green's Pilates Studio—Second Floor". *See id.* at Tab B. Mr. Green is also in the process of completing construction of a new building in Warrenton, Virginia, where he will operate another "Will Green's Pilates Studio." *See*

*id.* at Tab C. Defendant Green continues to use the term "Pilates Studio" in his business, even while Plaintiff contends that the PILATES STUDIO mark is registrable and enforceable; thus, it is evident that Mr. Green's infringement of the PILATES STUDIO mark remains in issue.[7]

### B. The PILATES STUDIO mark is not registrable

Defendant contends that the PILATES STUDIO mark is invalid because Plaintiff is attempting to register a mark composed of two disclaimed words. The PILATES STUDIO mark [Reg. No. 1,602,929] registered by Healite, Inc. with the PTO in June 1990 explicitly made no claim "to the exclusive right to use 'STUDIO', apart from the mark as shown." *See* Memorandum in Support of Motion at Exhibit 1. Following the October 19, 2000 *Current Concepts* decision and pursuant to the settlement agreement following that case, Plaintiff Pilates, Inc. filed a request with the PTO for an amendment to the PILATES STUDIO mark disclaiming the word "PILATES". *See id.* at Exhibit 8, ¶ 3(v). The Amendment of Registration states that:

> Pursuant to the October 19, 2000 decision in the within action, the judgment by the Court entered on October 25, 2000, a copy of which is attached, determining that the word Pilates is generic, and pursuant to 37 C.F.R. § 2.173, reg-

---

6. The PILATES STUDIO mark is also specifically referenced in the Counterclaim at ¶ 8. Defendant admittedly [mistakenly] *did not* specifically reference the PILATES STUDIO mark in Paragraph 34 of the Counterclaim while specific reference was made to the "PILATES" marks for exercise services and equipment. However, Defendant contends that, even if the Court were to find that he had not properly pleaded declaratory relief in Count II as to the PILATES STUDIO mark, he could request leave of the Court to amend Paragraph 34 of the Counterclaim. *See* Mem-

orandum in support of Motion at 9–10. The Court finds no reason for Defendant to amend its Counterclaim since the record in this case indicates that the PILATES STUDIO mark was [and is] disputed.

7. *See* Defendant's Exhibit B, letter from Pilates, Inc. General Counsel dated January 15, 2001, stating that "the registered trademark PILATES STUDIO ... remains the property of Pilates, Inc., which will continue to protect it against unauthorized use."

istrant Pilates, Inc. hereby amends registration no. 1,602,929 by making the following standard form disclaimer of record: No claim is made to the exclusive right to use PILATES apart from the mark as shown.

*See* Memorandum in Support of Motion at Exhibit 4. The application for amendment to the PILATES STUDIO mark was denied by the PTO on January, 23, 2001, because Pilates, Inc. attempted to disclaim the word PILATES notwithstanding the fact that the term STUDIO had already been disclaimed and an entire mark may not be disclaimed. *See* January 23, 2001 letter from PTO, attached as Defendant's Exhibit A.[8] The language used by the PTO [in its letter of denial] tracks *verbatim* the language used by the Federal Circuit in *Dena Corp. v. Belvedere Intl., Inc.*, 950 F.2d 1555, 1560 (Fed.Cir.1991). That court, and PTO Affidavit/Renewal Examiner, Ms. Hill, note:

> [U]nder traditional disclaimer practice an applicant could not disclaim all elements of a composite mark. Section 1056(a) codified this policy. A mark which must be entirely disclaimed has no "unregistrable component," but is instead entirely nonregistrable. In other words, a mark which must be entirely disclaimed has no "otherwise registrable" parts. Therefore such marks do not qualify as composite marks for which the Commissioner may require a disclaimer.

*Id.;* Defendant's Exhibit A.

The Lanham Trade Mark Act, § 6, as amended, 15 U.S.C.A. § 1056(a) (2001), states that: "[t]he Director may require the applicant to disclaim an unregistrable component of a mark otherwise registrable [and][a]n applicant may voluntarily dis-

claim a component of a mark sought to be registered." That section codified the PTO's pre-existing practice that either by direction of the Director of the PTO, or voluntarily, parties seeking to protect their rights to an otherwise registrable trademark, are expected to disclaim any portions of that mark that are unregistrable.

Indeed, the practice of refusing to register composite marks made entirely of non-registrable sub-parts predates the Lanham Act of 1946 and its more modern successors. In 1939, "Assistant Commissioner [of Patents] Frazer, said: 'The statute [the Trade-mark Registration Act of 1905] forbids the registration of either word alone and I can find no reasonable basis for holding that their association together results in a registrable combination.'" *In re Midy Labs.*, 26 C.C.P.A. 1294, 104 F.2d 617, 618 (C.C.P.A.1939). The Assistant Commissioner in *Midy* was referring to the refusal to grant a trademark for "Piperazine–Midy" where the applicant had amended the application to disclaim both words individually, but hoped to retain the registration on both words used together. *See id.* at 617. Thus, pre-Lanham Act PTO policy, as well as the current interpretation of 15 U.S.C.A. § 1056, clearly support the proposition that Plaintiff cannot amend the mark PILATES STUDIO after disclaiming both "PILATES" and "STUDIO".

Despite separately disclaiming both words in the PILATES STUDIO mark, and the denial by the PTO of the proposed amendment, Plaintiff contends that it is able to register PILATES STUDIO because section 6(b) of the Lanham Act [15 U.S.C.A. § 1056(b)] states that a prior disclaimer "shall not affect the applicant's

---

8. The PTO's letter grants Pilates, Inc. the right to file a petition within six months of the mailing date of the letter [January 23, 2001], if it disagrees with the PTO's determination. Pilates, Inc. has not informed the Court that it has appealed from the PTO's decision.

or registrant's rights then existing or thereafter arising in the disclaimed matter, or his right of registration on another application if the disclaimed matter is or shall have become distinctive of his goods or services" and it is entitled to "claim matter previously disclaimed in other trademark application[s]..." Opposition at 8.[9] In February 2001, Pilates, Inc. filed the currently pending application for registration of the PILATES STUDIO mark, in which the word "STUDIO" is not disclaimed, based on a secondary meaning theory. *See* Opposition at 9, citing Section 2(f) of the Lanham Act, 15 U.S.C. § 1052(f). Plaintiff's attempt to re-register previously disclaimed matter, under the theory that it has become distinctive of its goods and services, is not a question which this Court must consider, because it has no bearing on the initial [contested] registration of the PILATES STUDIO mark.

Instead, this Court must determine the validity of the original PILATES STUDIO mark (Reg. No. 1,602,929), and its attempted amendment. It is apparent from the record in this case that the PILATES STUDIO mark is non-registrable. Because a composite mark cannot be amended to disclaim all portions of the mark individually and remain valid, the original PILATES STUDIO mark is invalid and should be cancelled. The PTO's decision and the case law on this issue clearly support this conclusion. Furthermore, since there are no disputed issues of material fact with regard to the validity of the

PILATES STUDIO mark, summary judgment in favor of Mr. Green is appropriate.[10]

---

9. Another portion of the Act, now codified under 15 U.S.C.A. § 1057(e)(2001) reads: "Upon application of the registrant and payment of the prescribed fee, the Director for good cause may permit any registration to be amended or to be disclaimed in part: Provided, That the amendment or disclaimer does not alter materially the character of the mark ..."

10. Because summary judgment is appropriate under the first theory propounded by Mr. Green [the PILATES STUDIO mark is not registrable], the Court need not address the two alternative proposed theories [generic mark and assignment in gross].