This Opinion Is a
Precedent of the TTAB

Mailed: May 9, 2022

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Lego Juris A/S*

_____

Serial Nos. 88698784 and 88698804

_____

Michael J. Antonucci, Charles T.J. Weigell, and Roxana Monemdjou
      of Fross Zelnick Lehrman & Zissu PC, for Lego Juris A/S.

Matthew P. Howell, Trademark Examining Attorney, Law Office 123,
      Susan Hayash, Managing Attorney.

_____

Before Heasley, Lynch, and English,
      Administrative Trademark Judges.

Opinion by Lynch, Administrative Trademark Judge:

## I.   Background

Lego Juris A/S ("Applicant") seeks registration on the Principal Register of two composite marks shown below. Both applications identify the same variety of goods and services in International Classes 9, 16, 21, 25, 28, 41 and 42, many of which are geared toward children. For example, the Class 9 goods include DVDs featuring

children's entertainment, the Class 16 goods include children's publications, and the Class 41 services include "providing amusement facilities being a game place for children."

The first mark at issue is:



The application claims that the colors black, yellow, white, and red are a feature of the mark, and includes the following description:

> The mark consists of the wording "MONKIE" in a stylized yellow font, outlined in black with red highlights, followed by "KID" in a stylized red font, outlined in black with a red highlight and also having a stylized yellow dot of the letter "I". Between the two words is a stylized illustration of a monkey's head outlined in yellow and black and a red highlight, with a black head and red face, yellow eyebrows, white outline of its face below its eyebrows, black eyes signified by upward-pointing arches, black triangle nose, and a wide band of white teeth. On either end of the row of teeth is a red ear. Below all of this is an underline outlined in black with a red highlight that, for its first and fourth

---

[1] Application Serial No. 88698784 was filed November 19, 2019 under Section 44(d) of the Trademark Act, 15 U.S.C. § 1126(d). Applicant amended the application to a Section 44(e) basis when it submitted its foreign registration certificate. TSDR August 24, 2020 Response to Office Action.

Citations to the examination record refer to the USPTO's online Trademark Status and Document Retrieval system (TSDR). Citations to the appeal record are to the Board's online database TTABVUE. Before the TTABVUE designation is the docket entry number; and after this designation are the page references, if applicable. Unless otherwise indicated, citations are to the TSDR and TTABVUE records for the parent application in these consolidated proceedings, Serial No. 88698784.

quarters, is colored yellow with red and yellow stripes at either end. In between, the underline is colored red. To the right of these elements are a series of yellow non-Latin characters outlined in black. The remaining white in the mark represents background and is not a claimed feature of the mark.

The application also contains a statement that the non-Latin characters in the mark transliterate to "WU KONG XIAO XIA" and "this means 'MONKIE KID' in English."

The second mark at issue is:



.[2] The application claims that the colors black, yellow, white, and red are a feature of the mark, and includes the following description:

---

[2] Application Serial No. 88698804 was filed November 19, 2019 under Section 44(d) of the Trademark Act, 15 U.S.C. § 1126(d). Applicant amended the application to a Section 44(e) basis when it submitted its foreign registration certificate. Serial No. 88698804, TSDR August 24, 2020 Response to Office Action.

> The mark consists of yellow vertically aligned non-Latin characters outlined in black. To the right of this is a dividing line outlined in black that is colored yellow with red and yellow stripes at either end and in between is colored red. To the right of this is the wording "MONKIE" in a stylized yellow font outlined in black, followed by "KID" in a stylized red font with a stylized yellow dot of the letter "I", all outlined in black. Each letter is rotated 90 degrees to have its base facing left. Between the two words facing upright is a stylized illustration of a monkey's head outlined in yellow and black, with a black head and red face, yellow eyebrows, white outline of its face below its eyebrows, black eyes signified by upward-pointing arches, black triangle nose, and a wide band of white teeth. On either end of the row of teeth is a red ear. The remaining white in the mark represents background and is not a claimed feature of the mark.

The application also contains a statement that the non-Latin characters in the mark transliterate to "WU KONG XIAO XIA" and "this means 'MONKIE KID' in English."

In each application, the Examining Attorney required a disclaimer of the wording KID and the non-Latin characters that, according to Applicant, transliterate to "Xiao Xia," and mean "kid" in English. Applicant declined to comply with the disclaimer requirements. After the final Office Actions maintained the disclaimer requirements, Applicant requested reconsideration and appealed. The Examining Attorney denied reconsideration, noting that Applicant's new Internet evidence regarding the meaning of terms in the mark was not considered because it lacked the requisite URL and access dates. *See In re I-Coat Co.,* 126 USPQ2d 1730, 1733 (TTAB 2018). Applicant then requested a remand,[3] which the Board granted,[4] to supplement the

---

[3] 6 TTABVUE.

[4] 7 TTABVUE.

record with copies of the same materials showing the URL and access dates. The Examining Attorney considered the evidence, but maintained the final refusals of registration absent the required disclaimers.[5] The appeals returned to the Board for briefing. The Board then consolidated the cases[6] at the request of the Examining Attorney, designating Application Serial No. 88698784 as the parent case.

The appeals have been fully briefed. We reverse the refusals to register for the reasons set out below.

## II. Disclaimer Requirements

Under Section 6(a) of the Trademark Act, 15 U.S.C. § 1056(a), an applicant may be required to disclaim an unregistrable component of a mark otherwise registrable. "The PTO can condition the registration of a larger mark on an applicant's disclaimer of an 'unregistrable component of a mark otherwise registrable.' 15 U.S.C. § 1056(a)." *In re La. Fish Fry Prods., Ltd.*, 797 F.3d 1332, 116 USPQ2d 1262, 1264 (Fed. Cir. 2015). Failure to provide the required disclaimer constitutes a ground for refusing registration. *In re Stereotaxis Inc.*, 429 F.3d 1039, 77 USPQ2d 1087, 1088-89 (Fed. Cir. 2005); *In re Am. Furniture Warehouse Co.,* 126 USPQ2d 1400, 1403 (TTAB 2018).

In this case, the Examining Attorney takes the position that KID describes the intended users of the goods,[7] so KID, as well as the foreign-language equivalent

---

[5] 8 TTABVUE.

[6] 15 TTABVUE.

[7] The Examining Attorney submitted a definition of "kid" as a "child or young person." TSDR February 24, 2020 Office Action at 2 (lexico.com). He also points to third-party registrations for allegedly comparable goods and services that treat "kid" as a descriptive term, either by

wording in the mark, must be disclaimed. Applicant argues that its marks are unitary.

If the elements of a composite mark are so merged together that they cannot be viewed as separable elements, the mark is considered unitary, thereby rendering a disclaimer unnecessary. *In re EBS Data Processing, Inc.,* 212 USPQ 964, 966 (TTAB 1981). According to the U.S. Court of Appeals for the Federal Circuit, "a unitary mark simply has no 'unregistrable component,' but is instead an inseparable whole." *Dena Corp. v. Belvedere Int'l, Inc.*, 950 F.2d 1555, 21 USPQ2d 1047, 1051 (Fed. Cir. 1991).

Several factors inform the unitariness analysis: the physical connection of the potentially unregistrable component to other elements of the proposed mark by lines or other design features; the relative location of the respective elements of the proposed mark; and the significance of the terminology as used on or in connection with the goods or services. *Dena v. Belvedere*, 21 USPQ2d at 1052; *see also* TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 1213.05 (July 2021). Relying on these factors, the Federal Circuit in *Dena v. Belvedere* reversed a unitariness finding by the Board where the elements of the composite mark at issue were "not connected by any lines or design features," and nothing about the meaning of the words and their relation to the design feature melded them to suggest that "a potential purchaser would perceive this mark to convey a single inseparable impression." *Dena v. Belvedere*, 21 USPQ2d at 1052; *contrast Kuppenheimer & Co v.*

---

disclaimer, claim of acquired distinctiveness, or registration on the Supplemental Register. TSDR October 21, 2020 Office Action at 2-57.

*Kayser-Roth Corp.,* 326 F.2d 820, 140 USPQ 262, 263 (CCPA 1964) (wording connected by shared double P's became "an indivisible symbol").

The Board has offered some illustrations of the unitariness exception to a disclaimer requirement:

> This may occur where, for example, a compound word is formed by combining two words or terms, one of which would be unregistrable by itself, or when a compound word is formed by hyphenating two words or terms, one of which would be unregistrable by itself, or where a descriptive term is combined with a non-descriptive term so as to form a mark which has a distinct non-descriptive meaning of its own as a whole, [*See: In re Continental Distilling Corporation,* 117 USPQ 300 (CCPA 1958)], or where the words which have been put together function as a unit, each part relating to the other parts and not directly to the goods. *See: Morehouse Manufacturing Corporation v. J. Strickland and Company,* 160 USPQ 715 (CCPA 1969).

*EBS Data Processing,* 212 USPQ at 966.

In this case, we find that the elements of each composite mark merge together in a way that conveys a unitary impression. In the horizontal mark, , the words MONKIE and KID are physically connected to the design of a monkey's head, which touches and slightly overlaps with the final letter of MONKIE and the first letter of KID. We are not persuaded by the Examining Attorney's contention that the monkey head design "functions as a space" that separates the words.[8] Connecting elements with a design feature tends to show unitariness. *Dena v. Belvedere,* 21 USPQ2d at 1052. This conclusion is bolstered by

---

[8] 16 TTABVUE 14 (Examining Attorney's Brief).

the curled tail over the letter I in KID, which gives the sense that the monkey's body is hidden behind the word KID, with the tail peeking over the top. A similar tail design also appears at the bottom right, connected to the Chinese lettering joined to the edge of the D in the word KID and to the edge of the underlining beneath MONKIE KID and the monkey head design.

The Examining Attorney suggests that the appearance of the word KID in red, in contrast to the other wording in the mark in yellow, helps set KID apart, but we do not fully agree. The monkey head design incorporates both red and yellow, and this color scheme, like the design itself and its placement, serves to bring the words MONKIE and KID together, reinforced by the underlining of both words and the design in alternating red and yellow. We find the elements of the mark as a whole are "so merged together that they cannot be regarded as separate." *Dena v. Belvedere*, 21 USPQ2d at 1052.

When encountering the mark, potential purchasers likely would not perceive the English language word KID, or its foreign equivalent, as a reference to the intended users of the goods and services. The monkey-related design elements and the connection of the various features combine to give the impression of a "monkey kid" creature. Thus, potential purchasers are likely to understand KID, and its foreign equivalent, to refer to the MONKIE KID creature named and depicted in the mark. In this way, "a registrable term and an unregistrable term are joined together [with design elements] so as to form a mark which has a distinct non-descriptive meaning of its own…." *In re Kraft, Inc.*, 218 USPQ 571, 573 (TTAB 1983).



We find Applicant's vertical mark, , unitary for similar reasons. Again, the monkey head design physically touches and overlaps with the wording MONKIE KID, and a tail design appears over the I in KID, with this portion of the mark and its underlining appearing in the same color scheme described above. While in this mark, the Chinese characters do not touch the edges of the other elements of the mark, we nonetheless still find the elements sufficiently merged to render the mark unitary. The tail design in the Chinese characters is larger and comes up around the side of the English word KID, which includes a similar tail design; the Chinese characters that transliterate to "Wu Kong Xiao Xia" are equivalent to the English wording MONKIE KID that appears integrated with the monkey head and tail design over the letter I. Overall, just as with the horizontal mark, potential purchasers would tend to perceive the vertical mark as a whole as a reference to the MONKIE KID creature named and depicted in the mark. They would not tend to view the KID portion of the mark, or its foreign language equivalent, as a reference to the intended users of the goods and services.

For these reasons, we find that in both of Applicant's marks, KID, and its equivalent that transliterates as XIAO XIA, combine with the other elements of the

mark to form "an 'inseparable whole,' [and are] exempted from the disclaimer requirement …." *In re Slokevage*, 441 F.3d 957, 78 USPQ2d 1395, 1399 (Fed. Cir. 2006). Based on these determinations, we need not reach Applicant's other arguments.

**Decision**: The refusals to register Applicant's marks are reversed.