5/22/01

**THIS DISPOSITION
IS CITABLE AS PRECEDENT
OF THE T.T.A.B.**

GDH/gdh
Paper No. 12

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re JT Tobacconists

_____

Serial No. 75/598,351

_____

Katheryn A. Andresen of Lockridge Grindal Nauel P.L.L.P. for JT Tobacconists.

Jon Schiffrin, Trademark Examining Attorney, Law Office 115 (Tomas Vlcek, Managing Attorney).

_____

Before Seeherman, Hohein and Chapman, Administrative Trademark Judges.

Opinion by Hohein, Administrative Trademark Judges:

JT Tobacconists, a Minnesota corporation located in Minnetonka, Minnesota, has filed an application to register the mark "MINNESOTA CIGAR COMPANY" for "cigars; cigar cases not made of precious metal; [and] humidors".[1]

Registration has been finally refused under Section 2(e)(2) of the Trademark Act, 15 U.S.C. §1052(e)(2), on the

---

[1] Ser. No. 75/598,351, filed on December 2, 1998, which alleges a bona fide intention to use such term in commerce. As filed, the application contains the following "disclaimer": "No claim is made to the exclusive right to use [Minnesota], [Cigar] and [Company] apart from the mark as shown." However, inasmuch as the "disclaimer" is unacceptable in that it results in a disclaimer of the entire mark, it will not be given any further consideration. See, e.g., Dena Corp. v. Belvedere Int'l Inc., 950 F.2d 1555, 1560, 21 USPQ2d 1047, 1051 (Fed. Cir. 1991); In re MCI Communications Corp., 21 USPQ2d 1534, 1537-38 (Comm'r Pats. 1991); and TMEP §§1213.01(c) and 1213.07.

ground that, as applied to applicant's goods, the mark "MINNESOTA CIGAR COMPANY" is primarily geographically descriptive of them.

Applicant has appealed. Briefs have been filed,[2] but an oral hearing was not requested. We affirm the refusal to register.

---

[2] Applicant, in its initial brief, for the first time has referred to several third-party registrations in support of an equitable argument that registration is warranted herein because "[t]he Patent & Trademark Office has already registered similar names." The Examining Attorney, in his brief, has properly objected to consideration of such registrations, noting that the Board does not take judicial notice of registrations residing in the U.S. Patent and Trademark Office ("USPTO"). It is settled, in this regard, that a mere list of third-party registrations "is insufficient to make them of record." See, e.g., In re Duofold Inc., 184 USPQ 638, 640 (TTAB 1974). Instead, the proper procedure for making information concerning third-party registrations of record is to submit either copies of the actual registrations or the electronic equivalents thereof, i.e., printouts of the registrations which have been taken from the USPTO's own computerized database. See, e.g., In re Consolidated Cigar Corp., 35 USPQ2d 1290, 1292 n.3 (TTAB 1995); In re Smith & Mehaffey, 31 USPQ2d 1531, 1532 n.3 (TTAB 1994); and In re Melville Corp., 18 USPQ2d 1386, 1388 n.2 (TTAB 1991). Moreover, and in any event, the Examining Attorney also correctly points out that applicant's reference to such registrations is untimely under Trademark Rule 2.142(d) and that, by referring thereto "at the appeal stage, applicant is attempting to introduce evidence that cannot be controverted by the examining attorney at this late stage." Undaunted, applicant has submitted with its reply brief printouts from USPTO records of the third-party registrations upon which it attempts to rely, including registrations for such marks as "MANHATTAN CIGAR COMPANY" for cigars, cigar cases and holders not of precious metal, and humidors, "MIAMI CIGAR & COMPANY" and design and "MIAMI CIGARS & COMPANY" for wholesale cigar distributorship services, "SAINT LOUIS CIGAR COMPANY" and design for retail and wholesale cigar distributorship services and "MEMPHIS CIGAR CO." and design for humidors and other smoker's articles. While we have not otherwise considered such evidence since, as the Examining Attorney properly points out, it is untimely under Trademark Rule 2.142(d), it is noted that, with the exception of the single registration for "MANHATTAN CIGAR COMPANY," the third-party registrations favor the Examining Attorney's position inasmuch as such registrations issued pursuant to the provisions of Section 2(f) of the Trademark Act, 15 U.S.C. §1052(f), and/or contain disclaimers of the particular geographical terms as well as the words "CIGAR(S)" and "COMPANY" (or the abbreviation therefor). Likewise while we have given no consideration, because its submission is untimely, to the copy accompanying applicant's reply brief of the "Minnesota Department of Trade and Economic Development's annual report § 4.8 listing products grown in the State of Minnesota," we observe that

2

As a general proposition, in order for registration of a mark to be properly refused on the ground that it is primarily geographically descriptive of an applicant's goods or services, it is necessary to establish that (i) the primary significance of the mark is that of the name of a place generally known to the public and (ii) that the public would make a goods/place or services/place association, that is, believe that the goods or services for which the mark is sought to be registered originate in that place. See, e.g., University Book Store v. University of Wisconsin Board of Regents, 33 USPQ2d 1385, 1402 (TTAB 1994); and In re California Pizza Kitchen Inc., 10 USPQ2d 1704, 1705 (TTAB 1988), citing In re Societe Generale des Eaux Minerales de Vittel S.A., 824 F.2d 957, 3 USPQ2d 1450, 1452 (Fed. Cir. 1987). Provided that these conditions are met, and the goods or services come from the place named by or in the mark, the mark is primarily geographically descriptive.

Moreover, where there is no genuine issue that the geographical significance of a term is its primary significance, and where the geographical place named by the term is neither obscure nor remote, a public association of the goods or services with the place may ordinarily be presumed from the fact that the applicant's goods or services come from the geographical place named in the mark. See, e.g., In re California Pizza Kitchen Inc., supra; and In re Handler Fenton Westerns, Inc., 214 USPQ 848, 850 (TTAB 1982). In addition, the presence of generic or

consideration thereof would make no difference in the outcome of this appeal.

3

highly descriptive terms in a mark which also contains a primarily geographically descriptive term does not serve to detract from the primary geographical significance of the mark as a whole.  See, e.g., In re Cambridge Digital Systems, 1 USPQ2d 1659, 1662 (TTAB 1986); and In re BankAmerica Corp., 231 USPQ 873, 875 (TTAB 1986).

In response to the first Office action, applicant's former attorney stated that "[t]he products which will be sold with the proposed mark will be either packaged or produced in Minnesota."  Applicant's current attorney, in its initial brief, ratifies such statement by asserting that applicant has "begun selling its goods on the internet under the domain name: www.minnesotacigarcompany.com" and "confirming that the goods were at a minimum packaged and shipped from Minnesota." Applicant admits, therefore, that "the mark identifies the point of origin of the goods."  Applicant further acknowledges in its initial brief that its "previous attorney ... made the inartful statement [that] 'the primary significance of the mark is to identify the point of origin of the goods,'" but claims that the comment was made "in order to counter the assertion that the mark may be geographically deceptively misdescriptive if the goods will not originate in Minnesota."  Applicant, although notably without any evidentiary support, additionally asserts on appeal that "[t]he actual primary significance [of the mark] is to suggest a level of excellence in procuring top quality cigars and cigar related products."

Applicant also argues, as perhaps its strongest point, that "geographic names are not always associated with the goods produced [in the location named by the mark,] making the reference to geography arbitrary" rather than descriptive. In particular, applicant maintains that:

> Tobacco is not grown in Minnesota, nor is Minnesota associated with the production of cigars. The potential purchasers absolutely will not associate the goods, cigars, with the geographic location. In addition, the potential and actual purchasers of the goods, cigars, do not perceive the mark **MINNESOTA CIGAR COMPANY** as identifying the geographic origin of the goods. Here, the name **MINNESOTA CIGAR COMPANY** as a geographic location has no significant relation to the production of cigars and is therefore arbitrary.

Applicant accordingly concludes that, when used in connection with its goods, its mark is not primarily geographically descriptive.

The Examining Attorney, on the other hand, argues that the primary significance of applicant's mark, as a whole, is that of a geographic location and that the purchasing public would make a goods/place association in that they would believe that applicant's goods originate in Minnesota. Specifically, as to the former, the Examining Attorney relies upon the definition of record of the word "Minnesota," which The American Heritage Dictionary of the English Language (3rd ed. 1992) lists as:

> A state of the Northern United States bordering on Lake Superior and on Manitoba and Ontario, Canada. It was admitted as the 32nd state in 1858. First explored by the French in the mid-17th century, the area became part of the United States through the Treaty of Paris (1783) and the Louisiana

> Purchase (1803).  St. Paul is the capital and
> Minneapolis the largest city.  Population,
> 4,387,029.

The Examining Attorney, in light thereof, concludes that the

primary significance of the word "MINNESOTA" in applicant's mark is geographical in that it designates "a geographic location which is neither obscure nor remote."

The addition, furthermore, of the words "CIGAR COMPANY," the Examining Attorney insists, "does not obviate a determination of geographic descriptiveness" because such words "are descriptive terms referring to the products provided by the applicant." The word "cigar," the Examining Attorney notes, is generic for applicant's cigars and merely descriptive of its cigar cases and humidors, while the word "company," being an entity designation, "is generic since the term is incapable of identifying the applicant's goods and distinguishing them from those of others." Consequently, and since "[t]he applicant has not disputed the genericness of **CIGAR COMPANY** for an ... entity that is in the business of selling **cigars** and **cigar products**," the Examining Attorney insists that "the addition of this generic matter does not remove the mark from being primarily geographically descriptive."

As to whether the purchasing public would make a goods/place association by believing that applicant's goods have their origin in Minnesota, the Examining Attorney cites In re Nantucket Allserve Inc., 28 USPQ2d 1144 (TTAB 1993), for the proposition that, where "the primary significance of a mark is to indicate a geographic location which is neither obscure nor remote and the applicant's goods are manufactured or produced in the location indicated, then the public is likely to believe that the geographic term identifies the place from which the goods

7

originate." Here, as noted above, not only is Minnesota neither obscure nor remote, but as the Examining Attorney points out, applicant has made an "admission that the goods are manufactured or produced in Minnesota." Therefore, absent sufficient incongruity between the place named in or by the mark and the goods marketed thereunder, the Examining Attorney maintains that a goods/place association must be presumed.

In particular, the Examining Attorney asserts that, unlike use of the mark "NORTH POLE" for goods, such as bananas, which could not possibly emanate from that geographic location, this case is not one in which applicant's goods have no significant or plausible relation to the State of Minnesota. To the contrary, the Examining Attorney stresses that applicant's goods do indeed "emanate from the geographic location [named in applicant's mark], in that the applicant's business is located in Minnesota, and the applicant has stated that ... [its] products are packaged, produced and sold in Minnesota."

With respect to applicant's contention that tobacco is not grown in Minnesota and that such state is not associated with the production of cigars and/or cigar products, the Examining Attorney, citing In re Nantucket, Inc., 677 F.2d 95, 213 USPQ 889 (CCPA 1982), asserts that "[t]here is no requirement that the place identified in the mark be well known or noted for the goods ... in order to find the existence of a goods/place association" under the statute. Instead, according to the Examining Attorney:

> To establish a goods/place association, the examining attorney must only show a "reasonable basis" for concluding that the

> public is likely to believe that the mark identifies the place from which the goods originate. *In re Loew's Theatres, Inc.*, 226 USPQ 865 (Fed. Cir. 1985). The applicant is a Minnesota corporation with a business address in Minnesota. Accordingly, the state of Minnesota is involved in the production of cigars by being the business site of the applicant, especially since the applicant has stated that they package and produce their goods in Minnesota. Since applicant is located in Minnesota and performs business activities in Minnesota, consumers will have a reasonable basis to believe that their goods originate in Minnesota.

We agree with the Examining Attorney that the record in this case is sufficient to establish a *prima facie* case that the mark "MINNESOTA CIGAR COMPANY" is primarily geographically descriptive of applicant's cigars, cigar cases and humidors. Here, there simply is no doubt that the geographical significance of the term "MINNESOTA" is its primary significance, since such is its sole significance and, as one of the 50 states of the United States, Minnesota is plainly neither obscure nor remote. The additional presence in applicant's mark of the generic terminology "CIGAR COMPANY" for an entity in the business of selling cigars and related cigar products such as cigar cases and humidors does not detract from or otherwise alter the fact that the primary significance of the mark as a whole is geographical. See, e.g., In re Cambridge Digital Systems, supra; and In re BankAmerica Corp., supra. Accordingly, the Examining Attorney has clearly established that the first element of the test for whether applicant's mark is primarily geographically descriptive of its goods is met.

9

For us, the dispositive issue in this case is whether the second prong of the primarily geographically descriptive test is satisfied, that is, would the purchasing public for applicant's goods make a goods/place association by believing that the goods for which the mark is sought to be registered originate in Minnesota. We find that they would, inasmuch as a public association of applicant's goods with the State of Minnesota may be presumed from the fact that, as conceded by applicant, its goods "at a minimum [are] packaged and shipped from Minnesota" and thus such term identifies the point of origin of the goods. See, e.g., In re California Pizza Kitchen Inc., supra; and In re Handler Fenton Westerns, Inc., supra. There is simply no support for applicant's assertion that the primary significance of its mark "is to suggest a level of excellence in procuring top quality cigars and cigar related products." Applicant, moreover, has offered nothing, by way of argument or evidence, to demonstrate a sufficient incongruity between the place named in applicant's mark and the goods marketed thereunder.

Specifically, as to applicant's principal contention that its mark as a whole is arbitrary because, inasmuch as there is nothing to show that tobacco is grown in Minnesota or that such state is known for the production of tobacco products, there is no significant relationship between the State of Minnesota and the production of tobacco products, we note that cigars, cigar cases and humidors, unlike tobacco, are manufactured products which could have their origin practically anywhere. Therefore,

10

while the purchasing public for applicant's goods may be unlikely to assume that the tobacco in applicant's cigars comes from a Northern state like Minnesota, since tobacco is traditionally associated with states which have a longer and milder growing season (such as Virginia and North Carolina), there is nothing in the record which even suggests that it would be incongruous or otherwise unexpected for the purchasing public to believe that products manufactured from tobacco, such as cigars, and/or containers for tobacco products, such as cigar cases and humidors, all of which are produced and shipped by applicant from its place of business in Minnesota, originate in the State of Minnesota. There is no requirement, as the Examining Attorney correctly points out, that the State of Minnesota be noted for cigars and cigar products in order for a mark such as "MINNESOTA CIGAR COMPANY" to be held primarily geographically descriptive, and prospective purchasers of applicant's goods would reasonably believe that applicant's goods, being products manufactured either from tobacco or for use with tobacco products, originate in the State of Minnesota, since such state is the geographic location from which applicant produces and sells its cigars, cigar cases and humidors. See, e.g., In re Nantucket Allserve Inc., supra at 1146. Accordingly, we find that a goods/place association exists in that customers for applicant's goods would believe that its cigars, cigar cases and humidors are manufactured in the State of Minnesota and that, because applicant's goods do indeed come from such state, its mark is

11

primarily geographically descriptive of its goods within the meaning of the statute.

**Decision:** The refusal under Section 2(e)(2) is affirmed.