This Opinion is a
Precedent of the TTAB

Hearing: January 18, 2024                    Mailed: June 27, 2024

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

*In re Korn Ferry*
_____

Serial No. 90890949
_____

David M. Perry of Blank Rome LLP for Korn Ferry.

Alex Keam, Trademark Examining Attorney, Law Office 114,
    Nicole Nguyen, Managing Attorney.

_____

Before Taylor, Larkin, and Elgin,
    Administrative Trademark Judges.

Opinion by Larkin, Administrative Trademark Judge:

Korn Ferry ("Applicant") seeks registration on the Principal Register of the standard-character mark KORN FERRY ARCHITECT for services ultimately identified as follows:

> Executive search, recruitment and placement services; business consultation services in the field of human resources management and development; assessment of employment skills individuals for the purpose of selection, promotion and other employment related recommendations; auditing services for determining business management capabilities; organizational services, namely, services for organizing and coordinating talent management for managers and executives; career

management, namely, providing career information and career networking services for executives; employment counseling and consultation in the field of executive recruitment; providing a website featuring blogs in the field of human resources management and development, executive recruitment, talent management, and leadership development, in International Class 35; and

Providing temporary use of online non-downloadable software in the field of human resources that enables users to conduct online evaluation of and to improve leadership and managerial aptitudes, job performance and job development, and for recruiting, and analysis and evaluation of employment skills, in International Class 42.[1]

The Trademark Examining Attorney has refused registration under Section 6(a) of the Trademark Act, 15 U.S.C. § 1056(a), on the ground that the word ARCHITECT in Applicant's mark is merely descriptive of the services in each class in the application within the meaning of Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), and must be disclaimed.

When the Examining Attorney made the refusal final, Applicant appealed and requested reconsideration, which was denied. The appeal is fully briefed,[2] and counsel

---

[1] Application Serial No. 90890949 was filed on August 19, 2021 under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), based on Applicant's claim of first use of the mark anywhere and first use of the mark in commerce at least as early as November 1, 2019 in both classes.

[2] Citations in this opinion to the briefs refer to TTABVUE, the Board's online docketing system. *See New Era Cap Co. v. Pro Era, LLC*, 2020 WL 2853282, at *1 n.1 (TTAB 2020). The number preceding TTABVUE corresponds to the docket entry number, and any numbers following TTABVUE refer to the page(s) of the docket entry where the cited materials appear. Applicant's appeal brief appears at 6 TTABVUE and its reply brief appears at 10 TTABVUE. The Examining Attorney's brief appears at 9 TTABVUE.

for Applicant and the Examining Attorney appeared at an oral hearing before the panel on January 18, 2024. We reverse the refusal to register.[3]

## I. Record on Appeal[4]

The record on appeal consists of the file of Applicant's subject application, including its specimen of use;[5] dictionary definitions of "architect"[6] and "architecture;"[7] copies of the certificates of registration of other marks owned by Applicant that contain the word ARCHITECT without a disclaimer of the word;[8] and printouts of third-party webpages using the words "architect" and "architecture" in connection with human resources services and the provision of human resource and recruiting services to architects.[9]

---

[3] As part of an internal Board pilot program on broadening acceptable forms of legal citation in Board cases, the citation form in this opinion is in a form provided in Section 101.03 of the Trademark Trial and Appeal Board Manual of Procedure ("TBMP") (2024). This opinion cites decisions of the U.S. Court of Appeals for the Federal Circuit and the U.S. Court of Customs and Patent Appeals only by the page(s) on which they appear in the Federal Reporter (e.g., F.2d, F.3d, or F.4th). For decisions of the Board, this opinion employs citations to the Westlaw ("WL") database. Practitioners should also adhere to the practice set forth in TBMP § 101.03.

[4] Citations in this opinion to the application record are to pages in the Trademark Status & Document Retrieval ("TSDR") database of the United States Patent and Trademark Office ("USPTO").

[5] August 19, 2021 Application at TSDR 3-6. It appears that Applicant included the same two pages from its website twice in its specimen.

[6] May 23, 2022 Office Action at TSDR 2-7.

[7] December 17, 2022 Final Office Action at TSDR 53-54.

[8] November 23, 2022 Response to Office Action at TSDR 10-19; March 10, 2023 Request for Reconsideration at TSDR 12-21. It was unnecessary for Applicant to make the registrations of record more than once.

[9] December 17, 2022 Final Office Action at TSDR 2-52, 55.

## II.     Disclaimer Requirement Refusal

### A.     Applicable Law

"Under Section 6(a) of the Trademark Act, 15 U.S.C. § 1056(a), an applicant may be required to disclaim an unregistrable component of a mark otherwise registrable. 'The [USPTO] can condition the registration of a larger mark on an applicant's disclaimer of an 'unregistrable component of a mark otherwise registrable.'" *In re Lego Juris A/S*, 2022 WL 1744613, at *2 (TTAB 2022) (quoting *In re La. Fish Fry Prods, Ltd.*, 797 F.3d 1332, 1335 (Fed. Cir. 2015) (quoting 15 U.S.C. § 1056(a)). Merely descriptive terms are unregistrable under Trademark Act Section 2(e)(1), 15 U.S.C. § 1052(e)(1), and are therefore subject to disclaimer if the mark is otherwise registrable. "Failure to provide the required disclaimer constitutes a ground for refusing registration." *Lego Juris*, 2022 WL 1744613, at *2 (citing *In re Stereotaxis Inc.*, 429 F.3d 1039, 1041 (Fed. Cir. 2005); *In re Am. Furniture Warehouse Co.*, 2018 WL 1942214, at *2 (TTAB 2018)).

The Examining Attorney has required disclaimer of the word ARCHITECT in Applicant's mark on the ground that it is "merely descriptive" of the services identified in the application within the meaning of Section 2(e)(1) of the Trademark Act. Merely descriptive terms may not be registered on the Principal Register in the absence of a showing of acquired distinctiveness under Section 2(f) of the Trademark Act, 15 U.S.C. § 1052(f).[10] The mere descriptiveness of a word in a mark is assessed

---

[10] Applicant does not seek registration of its mark without a disclaimer of ARCHITECT based on a showing of acquired distinctiveness in part under Section 2(f) with respect to that word.

in the same manner as the mere descriptiveness of an entire mark. *See, e.g., In re UST Glob. (Sing.) Pte Ltd.*, 2020 WL 2093068, at *2 (TTAB 2020).

"A term is deemed to be merely descriptive of goods or services, within the meaning of Section 2(e)(1), if it forthwith conveys an immediate idea of an ingredient, quality, characteristic, feature, function, purpose or use of the goods or services." *In re Zuma Array Ltd.*, 2022 WL 3282655, at *3 (TTAB 2022) (internal quotations and citations omitted). A term "need not immediately convey an idea of each and every specific feature of the [services] in order to be considered merely descriptive; it is enough if it describes one significant attribute, function or property of the [services]." *Id.* (quoting *In re Fat Boys Water Sports LLC*, 2016 WL 3915986, at *2 (TTAB 2016) (citing *In re Gyulay*, 820 F.2d 1216, 1217-18 (Fed. Cir. 1987)). In addition, a term "need not be merely descriptive of all recited goods or services in an application. A descriptiveness refusal is proper 'if the mark is descriptive of any of the [services] for which registration is sought.'" *Id.* (quoting *In re Chamber of Com. of the U.S.*, 675 F.3d 1297, 1300 (Fed. Cir. 2012) (quoting *Stereotaxis*, 429 F.3d at 1041)).

Whether a term "is merely descriptive is evaluated in relation to the particular goods [or services] for which registration is sought, the context in which it is being used, and the possible significance that the term would have to the average purchaser of the [services] because of the manner of its use or intended use," *In re Fallon*, 2020 WL 6255423, at *8 (TTAB 2020) (quoting *Chamber of Com.*, 675 F.3d at 1300), and "not in the abstract or on the basis of guesswork." *Id.* (quoting *Fat Boys*, 2016 WL 3915986, at *2) (citing *In re Abcor Dev. Corp.*, 588 F.2d 811, 814 (CCPA 1978)). "We

ask whether someone who knows what the goods and services are will understand the [term] to convey information about them." *Id.* (quoting *Real Foods Pty Ltd. v. Frito-Lay N. Am., Inc.*, 906 F.3d 965, 974 (Fed. Cir. 2018) (quoting *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1254 (Fed. Cir. 2012)). Whether a term "is merely descriptive or not is determined from the viewpoint of the relevant purchasing public." *Zuma Array*, 2022 WL 3282655, at *4 (quoting *In re Omniome, Inc.*, 2019 WL 7596207, at *7 (TTAB 2019) (quoting *Stereotaxis*, 429 F.3d at 1043)). The record evidence discussed below shows that the relevant purchasers of the services identified in the application include companies and individuals seeking assistance in hiring decisions and other human resources matters.

"Evidence of the public's understanding of [a] term . . . may be obtained from any competent source, such as purchaser testimony, consumer surveys, listings in dictionaries, trade journals, newspapers[,] and other publications." *Id.* (quoting *Fallon*, 2020 WL 6255423, at *9 (quoting *Real Foods*, 128 USPQ2d at 1374)). "These sources may include [w]ebsites, publications and use in labels, packages, or in advertising materials directed to the goods [or services]." *Id.* (quoting *Fallon*, 2020 WL 6255423, at *9 (quoting *In re N.C. Lottery*, 866 F.3d 1363, 1367-68 (Fed. Cir. 2017) (internal quotation omitted))).

### B. Summary of Arguments

Applicant makes three basic arguments against the disclaimer requirement. First, Applicant argues that the USPTO has not required a disclaimer of ARCHITECT in Applicant's eight prior registrations of other marks containing the word. 6 TTABVUE

9-10. According to Applicant, this shows "a recognition by the [USPTO] that the use of the word ARCHITECT in this context is inherently distinctive, and that such marks are registrable without a disclaimer." *Id.* at 10.

Second, Applicant argues that KORN FERRY ARCHITECT is "a unitary mark, and as such, it was improper for the Examining Attorney to require a disclaimer for any portion of Applicant's mark." *Id.* at 11. Applicant claims that its KORN FERRY ARCHITECT mark is unitary "because it is inherently incongruous." *Id.* According to Applicant,

> the word KORN is a soundalike for the vegetable, corn . . . the word FERRY literally describes a boat used for transporting passengers or goods over short distances [and] the word ARCHITECT denotes a person who is qualified to design buildings and to plan and supervise their construction. These three words, used together in the mark KORN FERRY ARCHITECT, have a degree of ingenuity in its phraseology.

*Id.*

Finally, Applicant argues that the word ARCHITECT is not merely descriptive of the services identified in the application, but instead is at most suggestive. *Id.* at 13-16. Applicant argues that

> consumers must engage in at least a minimal amount of reasoning to associate the ARCHITECT portion of Applicant's mark with Applicant's services. They would first need to engage in at least a minimal amount of reasoning and reflection to dissect the mark into its underlying component parts – KORN FERRY and ARCHITECT; recognize the meanings of the individual terms; consider the multiple meanings of the word ARCHITECT conceded by the Examining Attorney and the possible meanings of the combined expression KORN FERRY ARCHITECT; and finally analyze and reorganize the terms in such a way so as to develop an understanding

> of KORN FERRY ARCHITECT as used in the context of Applicant's services, rendering it impossible for relevant consumers to **immediately** associate ARCHITECT with such services.

*Id.* at 15 (emphasis supplied by Applicant).

According to Applicant, the word ARCHITECT does not immediately describe the type of employees for whom Applicant provides its employment and recruitment services, but instead "requires a sort of mental stretch – and not immediate conveyance – on the part of consumers," *id.* at 15-16, in part because there is no known "human resources architect" position or role in connection with employment and recruitment services. *Id.* at 16.

The Examining Attorney makes two basic arguments in support of the disclaimer requirement. First, the Examining Attorney argues that Applicant "may provide its services for architects," noting that an "architect" is defined as "one who designs and supervises the construction of buildings or other large structures," 9 TTABVUE 4, and that all of the services identified broadly in Applicant's identifications could be provided to architects. *Id.* at 4-7.[11]

Second, the Examining Attorney argues that

> "Architect" is also a human resources industry term to refer to someone who "sets the conceptual and political stage for accomplishing any work related to organizational issues or talent. One of the distinguishing abilities of the Head of HR who acts as an organizational architect's [sic] is the capability to work at and across the organizational, conceptual and cultural boundaries. In doing so, the head looks well beyond the "people stuff" and looks at the entire system. . . . And perhaps the greatest contribution of the

---

[11] May 23, 2022 Office Action at TSDR 2 (THE AMERICAN HERITAGE DICTIONARY).

> organizational architect is the ability to see and then help manage the alignment of customer needs, business strategy, and organizational objectives, processes, systems and structures.

*Id.* at 7.[12]

The Examining Attorney also responds to Applicant's arguments. With respect to Applicant's prior registrations of marks without a disclaimer of ARCHITECT, the Examining Attorney argues that they are for different marks and goods and services, *id.* at 9, and that this case must be decided on its own merits. *Id.* at 9-10. The Examining Attorney also rejects Applicant's argument that its mark is unitary, arguing that "ARCHITECT is separable and must be disclaimed as being merely descriptive of the specified services." *Id.* at 10. Finally, the Examining Attorney argues that in "the context of human resources services, ARCHITECT is merely descriptive of the services." *Id.* at 11.

In its reply brief, Applicant argues that the Examining Attorney identified "different interpretations of the word ARCHITECT to suggest that the word is merely descriptive of Applicant's services," 10 TTABVUE 6, including as identifying the end users of the services, and as a human resources term of art identifying a particular leader in an organization. Applicant claims that each of these interpretations makes the word suggestive, not merely descriptive, of the services. *Id.* at 6-8.

---

[12] December 17, 2022 Final Office Action at TSDR 2 (LinkedIn) (the error does not appear in the original quoted material).

### C.   Analysis of Disclaimer Requirement Refusal

It is the Examining Attorney's burden to show that a mark or term is merely descriptive of an applicant's goods or services. *Zuma Array*, 2022 WL 3282655, at *5. In this section, we separately analyze Applicant's first two arguments regarding its prior registrations and its claim that KORN FERRY ARCHITECT is a unitary mark. We consider Applicant's third argument that ARCHITECT is not merely descriptive in our discussion of the Examining Attorney's two arguments that the USPTO's burden of showing that ARCHITECT is merely descriptive has been carried.

#### 1.   Applicant's Reliance on Registrations of Other Marks Without a Disclaimer of ARCHITECT

The USPTO has issued eight registrations for Applicant's other marks containing the word ARCHITECT without a disclaimer of that word, but that fact does not entitle Applicant to a registration of the KORN FERRY ARCHITECT mark without a disclaimer. *Am. Furniture Warehouse*, 2018 WL 1942214, at *7 (affirming disclaimer requirements while acknowledging that the applicant's "prior registrations 'have registered in the past without disclaimers'"). It is axiomatic that the "Board must assess each mark on its own facts and record," *id.* (citing *In re Nett Designs Inc.*, 236 F.3d 1339, 1342 (Fed. Cir. 2001)), and that "the prior decisions and actions of other trademark examining attorneys in registering other marks are not binding upon the USPTO or the Board." *In re Dolce Vita Footwear, Inc.*, 2021 WL 2285577, at *2 n.6 (TTAB 2021) (citing *In re USA Warriors Ice Hockey Program, Inc.*, 2017 WL 2572815, at *4 n.10 (TTAB 2017)). "Each case is decided on its own facts, and each mark stands

on its own merits." *Id.* (citation omitted).[13] *See also In re Nat'l Data Corp.*, 753 F.2d 1056, 1059 (Fed. Cir. 1985) ("The absence of a disclaimer does not . . . mean that a word or phrase in a registration is, or has become, distinctive in the registered mark, so that part of the mark must be treated the same as an arbitrary feature" because the "power of the PTO to accept or require disclaimers is discretionary under the statute," and "it is inappropriate to give the presence or absence of a disclaimer any legal significance."). We must determine whether Applicant is entitled to a registration of KORN FERRY ARCHITECT without a disclaimer of ARCHITECT based on the record here and for the specific services identified in this application.

### 2. Applicant's Argument That KORN FERRY ARCHITECT is a Unitary Mark

A "unitary mark simply has no 'unregistrable component,' but is instead an inseparable whole." *Lego Juris*, 2022 WL 1744613, at *3 (quoting *Dena Corp. v. Belvedere Int'l, Inc.*, 950 F.2d 1555, 1560 (Fed. Cir. 1991)). A unitary mark's "elements are inseparable. In a unitary mark, these observable characteristics must combine to show that the mark has a distinct meaning of its own independent of the meaning of its constituent elements. In other words, a unitary mark must create a single and distinct commercial impression." *Dena*, 950 F.2d at 1561.

---

[13] In its reply brief, Applicant argues that the USPTO would achieve consistency in examination by issuing a registration of KORN FERRY ARCHITECT without a disclaimer of ARCHITECT. 10 TTABVUE 11. The Board has "recognize[d] that 'consistency is highly desirable,' [but] consistency in examination is not itself a substantive rule of trademark law, and a desire for consistency with the decisions of prior examining attorneys must yield to proper determinations under the Trademark Act and rules." *Am. Furniture Warehouse*, 2018 WL 1942214, at *7 (quoting *In re Omega SA*, 494 F.3d 1362, 1365 (Fed. Cir. 2007) and citing *In re Cordua Rests., Inc.*, 823 F.3d 594, 600 (Fed. Cir. 2016)).

> Several factors inform the unitariness analysis: the physical connection of the potentially unregistrable component to other elements of the proposed mark by lines or other design features; the relative location of the respective elements of the proposed mark; and the significance of the terminology as used on or in connection with the goods or services.

*Lego Juris*, 2022 WL 1744613, at *3 (citing *Dena*, 950 F.2d at 1561).

Applicant's KORN FERRY ARCHITECT mark is not a unitary mark, as Applicant's corporate name KORN FERRY is separable from the final word ARCHITECT, and the mark does not have "a distinct meaning of its own independent of the meaning of its constituent elements." *Dena*, 950 F.2d at 1561; *see also In re Royal Bodycare, Inc.*, 2007 WL 616034, at *2 (TTAB 2007) ("Cases have frequently held that an applicant's use of its corporate name or house mark along with another trademark or trade name does not create a unitary mark.") (citations omitted).

### 3. The Examining Attorney's Argument That ARCHITECT Merely Describes the Purchasers or End Users of Applicant's Services

As discussed above, the Examining Attorney's primary theory of the mere descriptiveness of the word ARCHITECT in Applicant's mark is that Applicant "may provide its services for architects." 9 TTABVUE 4.[14] With respect to the services identified in the two classes in the application, the Examining Attorney argues that

> [t]he "business consultation services in the field of human resources management and development" may feature architects. Its "assessment of employment skills individuals for the purpose of selection, promotion and other employment related recommendations" may assess architects. The "auditing services for determining business

---

[14] The Examining Attorney's argument at the oral hearing was devoted primarily to this theory.

management capabilities" may audit architects or architect organizations. The "services for organizing and coordinating talent management for managers and executives" may organize and coordinate architects. The applicant may also provide "career information and career networking services for executives" for and about architects. "Employment counseling and consultation in the field of executive recruitment" may feature architects. The "blogs in the field of human resources management and development, executive recruitment, talent management, and leadership development" may also feature architects. Finally, the "online non-downloadable software in the field of human resources that enables users to conduct online evaluation of and to improve leadership and managerial aptitudes, job performance and job development, and for recruiting, and analysis and evaluation of employment skills" may be intended for architects so that architects may be evaluated.

*Id.* The Examining Attorney cites third-party webpages, claiming that they support this theory of descriptiveness. *Id.* at 4-7.

Neither the Examining Attorney nor Applicant cites any cases discussing this theory of mere descriptiveness, and we have located very few precedential decisions, and none of recent vintage, in which the Board has considered it. We summarize the most pertinent precedential cases below.

In *In re Hunter Publ'g Co.*, 1979 WL 24907 (TTAB 1979), which appears to be the most frequently cited precedential case on this issue, the Board affirmed a mere descriptiveness refusal to register JOBBER AND WAREHOUSE EXECUTIVE for a trade magazine. The Board stated that it "has been consistently held that a mark which describes the intended users of a particular product is merely descriptive of such goods." *Id.* at \*5 (citations omitted).

The Board held that publication titles "need not describe all of the various readers or recipients of the publications" and that it "is sufficient for the purpose of falling within the prohibition of Section 2(e)(1) that they describe with particularity individuals or classes of individuals to whom the publications are primarily directed." *Id.*[15] The Board found that JOBBER AND WAREHOUSE EXECUTIVE was merely descriptive of the applicant's trade magazine because "there is no question from the contents of the publication of record herein that it is directed to jobber and warehouse managers or executives in the automotive aftermarket and that this would be the initial impact of the mark as used and encountered in the marketplace for such a publication." *Id.* at *6.

In *In re Camel Mfg. Co.*, 1984 WL 63080 (TTAB 1984), the Board affirmed a mere descriptiveness refusal to register MOUNTAIN CAMPER for "retail and mail order services in the field of outdoor equipment and apparel" because the mark "merely describes the type of customer to whom applicant's services are directed." *Id.* at *1. Based on a review of the applicant's catalog, the Board found that it was clear that "at least some of applicant's goods are directed toward the category of purchaser we could refer to as the 'mountain camper' . . . ." *Id.* at *2. The Board "embrace[d] the holding [in *Hunter Publ'g*] that a mark is merely descriptive if it describes the type of individuals to whom an appreciable number or all of a party's goods or services are directed." *Id.*

---

[15] *Hunter Publ'g* involved the title of a publication, but the Board noted that the same principles applied to marks for other goods or services. *Hunter Publ'g*, 1979 WL 24907, at *5.

In *Hunter Publ'g Co. v. Caulfield Publ'g Ltd.*, 1986 WL 83351 (TTAB 1986), the Board found that SYSTEMS USER for a periodic trade journal was not generic for those goods. The applicant conceded that SYSTEMS USER was merely descriptive under the *Hunter Publ'g* and *Camel Mfg.* cases discussed above because SYSTEMS USER described the applicant's readership, *id.* at *2-3, and the Board stated in dicta that "it is clear that persons in the industry are referred to as 'system users' or 'systems users'" and "[t]o that extent the title of applicant's magazine is descriptive as to some, if not all, of its readers or subscribers." *Id.* at *3.

In *In re Planalytics, Inc.*, 2004 WL 715031 (TTAB 2004), the Board affirmed a mere descriptiveness refusal to register GASBUYER for services identified as "providing on-line risk management services in the field of pricing and purchasing decisions for natural gas" because the record showed that "gas buyer" was a "term applied to people who purchase natural gas supplies," *id.* at *2, "[a]pplicant's identification of services makes it clear that its services are directed to those who are in the field of making purchasing decisions for natural gas," *id.* at *4, and "applicant's mark describes a feature or characteristic of the services to the extent that it immediately conveys that its services are intended for individuals who purchase natural gas." *Id.*

Taken together, these cases hold that a mark or term comprising part of a mark is merely descriptive of goods or services if it immediately identifies the consumers to which the identified goods or services, or an appreciable number of the goods or services, are at least primarily directed. The possible mere descriptiveness of a term

under this theory is determined on the basis of the term itself, the identification of goods or services, and any evidence of the applicant's use of the term.[16]

We turn now to the application of these cases to the word ARCHITECT in Applicant's mark KORN FERRY ARCHITECT. We begin our analysis with Applicant's mark itself. We find that, in the context of Applicant's mark as a whole and the services identified in the application and discussed below, the word ARCHITECT does not immediately identify a person "who designs and supervises the construction of buildings or other large structures"[17] as the type of individual to whom all or an appreciable number of Applicant's services are primarily directed. *Camel Mfg.*, 1984 WL 63080, at \*2.

We turn next to Applicant's identifications of services and specimen. There is nothing in the Class 35 and Class 42 identification of services themselves that indicates the consumers of the services. Unlike the identification of services in *Planalytics* ("providing on-line risk management services in the field of pricing and purchasing decisions for natural gas"), which made "it clear that [the] services are directed to those who are in the field of making purchasing decisions for natural gas," i.e., "gas buyers," *Planalytics*, 2004 WL 715031, at \*4, the identifications of

---

[16] Applicant argues against the mere descriptiveness of ARCHITECT on this theory as follows: "If the Examining Attorney's interpretation were correct, consumers would have to assume that Applicant's services involve hiring or serving only 'KORN FERRY ARCHITECTS' or 'ARCHITECTS' at large, but this certainly is not the case." 10 TTABVUE 7. As discussed above, the applicable cases do not require the Examining Attorney to show that ARCHITECT immediately describes the **only** users of Applicant's services, but rather the consumers to which the services are at least primarily directed.

[17] May 23, 2022 Office Action at TSDR 2 (THE AMERICAN HERITAGE DICTIONARY).

Applicant's Class 35 human resources and recruiting services and Class 42 human resources-related software services never allude to professional architects and do not state or imply that the services are primarily directed to, or consumed primarily by, professional architects. *See Hunter Publ'g Co.*, 1979 WL 24907, at *6. Although the identifications of services are broad enough to encompass professional architects as possible consumers of Applicant's services, we decline to infer from the identifications alone that the services are primarily directed to, or primarily consumed by, professional architects.

With respect to Applicant's specimen, in the *Hunter Publ'g* and *Camel Mfg.* cases, the Board specifically discussed and relied on the applicants' actual uses of the proposed marks in the course of finding them to be merely descriptive of the involved goods. In *Hunter Publ'g*, the Board found that the contents of the applicant's trade magazine made it clear that the publication was "directed to jobber and warehouse managers or executives in the automotive aftermarket," *Hunter Publ'g*, 1979 WL 24907, at *6, while in *Camel Mfg.*, the Board found that the applicant's catalog made it clear that "at least some of applicant's goods are directed toward the category of purchaser we could refer to as the 'mountain camper' . . . ." *Camel Mfg.*, 1984 WL 63080, at *2.

Subsequent to the Board's consideration of the applicants' actual uses in these cases, the Federal Circuit made clear in *N.C. Lottery* that the Board must consider a mark in its commercial context in assessing mere descriptiveness where there is record evidence of the commercial context of use, such as the applicant's specimen,

website, or other materials. *N.C. Lottery*, 866 F.3d at 1367-68. Applicant's specimen of use, which the Examining Attorney never discusses, begins as follows:

Korn Ferry Architect

Improve organizational performance with a new job architecture [18]

The body of the specimen makes no mention of professional architects as the intended or even incidental users of the referenced services. The specimen states that "Korn Ferry Architect streamlines job design, work measurement, and related talent processes" and "enables you to design, evaluate and change jobs quickly and efficiently and gives you a comprehensive view of where jobs sit in your organization."[19] One page of the specimen states that "Korn Ferry Architect provides organization and talent planning architecture for an agile, future-focused workforce where everyone has opportunities to develop to their full potential,"[20] while another refers to "Job Architecture," which enables users to "[c]reate order out of chaos with a global framework that supports consistency across the business."[21] Applicant's specimen uses the word "Architect" figuratively in the sense of "[o]ne that plans, devises, or organizes something,"[22] not literally in the sense of "one who designs and supervises the construction of buildings or other large structures."[23] Unlike the

---

[18] August 19, 2021 Application at TSDR 3.

[19] *Id.*

[20] *Id.*

[21] *Id.* at TSDR 4.

[22] May 23, 2022 Office Action at TSDR 2 (THE AMERICAN HERITAGE DICTIONARY).

[23] *Id.*

evidence of actual use in the *Hunter Publ'g* and *Camel Mfg.* cases, Applicant's specimen of use here does not make it clear that an appreciable part, or even any part, of Applicant's services are primarily directed to architects.

We agree with the Examining Attorney that the record shows that professional architects could be consumers of at least some of those services,[24] but there is nothing on the face of the mark, in the identifications of services, or in Applicant's specimen, that shows that the word ARCHITECT immediately identifies architects as the consumers to which all or an appreciable number of those services are at least primarily directed. *See Hunter Publ'g*, 1979 WL 24907, at *5. We find that the word ARCHITECT in Applicant's mark KORN FERRY ARCHITECT is not merely descriptive of any of Applicant's services under the Examining Attorney's theory that Applicant "may provide its services for architects." 9 TTABVUE 4.

### 4. The Examining Attorney's Argument That ARCHITECT is a Recognized Term of Art in the Human Resources Field

The Examining Attorney's second theory of mere descriptiveness is that "'architect' is a term of art in the human resources industry referring to someone who 'sets the conceptual and political stage for accomplishing any work related to organizational issues or talent . . .'" *Id.* at 7.[25] The Examining Attorney cites 13

---

[24] Some of the websites made of record by the Examining Attorney show instances in which human resources or recruiting firms explicitly state that they provide services to or for architects. December 17, 2022 Final Office Action at TSDR 10 (archipro.com), 19 (ziprecruiter.com), 29 (hiring.monster.com), 30 (ivyexec.com), 35 (interiortalent.com), 36 (aecresources.com), 45 (architizer.com).

[25] *Id.* at TSDR 2. The quoted record excerpt is a LinkedIn page captioned "HR's Role as Organizational Architect." It discusses the importance of HR's having a "seat at the table" in the decision making in every organization. It explains that "an organization architect" "sets the conceptual and political stage for accomplishing any work related to organizational issues

webpages claiming that they show that ARCHITECT is merely descriptive under this theory. *Id.* at 7-8. There is no explanation, however, as to what quality, characteristic, feature, function, purpose, or use of any of Applicant's services is immediately described by the word ARCHITECT in Applicant's KORN FERRY ARCHITECT mark.

Five of the 13 record excerpts cited by the Examining Attorney do not even use the word "architect," but rather use the word "architecture,"[26] while a sixth states that "HR is the architect of work," analogizes HR professionals to actual architects who are "responsible for creating functional, safe, aesthetically pleasing, economical structures," and concludes that the "role of human resources is to be the architect of work."[27] These excerpts do not show that there is a recognized meaning of the term "architect" in the human resources field as identifying a particular person.

With respect to the remaining cited excerpts, three of them use ARCHITECT in the plural as part of a service mark, in the manner of its use in the singular in

---

or talent" and states that "[o]ne of the distinguishing abilities of the Head of HR who acts as an organizational architect is the capability to work at and across the organization, conceptual and cultural boundaries" of an organization. Such "[a]n organizational architect has, by definition, chosen to think about issues that cut across the entire spectrum of the organization." It lists a series of objectives for "an organizational architect." This excerpt uses "architect" figuratively to refer to a function of the human resources group in an organization and its head, not to identify any specific identifiable "organizational architect."

[26] *Id.* at TSDR 4 (emplicity.com website stating that "emplicity knows architecture"); 5-6 (deloitte.com website referring in a headline and in text to "job architecture"); 26 (gradar.com website captioned "Turn potential into performance with a powerful job architecture" and discussing "What is a Job Architecture?"); 32 (skillsoft.com website captioned "Professional in Human Resources: Job Architecture" and offering a video course including a module on "Job Architecture Framework"); 47 (lattice.com website captioned "What is Job Architecture and Why Does It Matter?" and discussing "Job Architecture").

[27] *Id.* at TSDR 3 (hrbartender.com).

Applicant's KORN FERRY ARCHITECT service mark, but not to identify or describe a position in the human resources field. The HRArchitects.com website uses HR ARCHITECTS to identify a "consulting company with the expertise on designing, building and enhancing your Talent Management Strategies."[28] The impactarchitects.com website uses IMPACT ARCHITECTS to identify "a human resources advisory and recruiting firm driven to serve and scale growing businesses by helping them to attract and develop talent to boost performance."[29] The peoplearchitects.io website uses PEOPLE ARCHITECTS to identify a company that provides "Human Resources and Recruiting solutions for growing businesses."[30]

A listing for a job at Stanford Health Care in Palo Alto, California described as "Center of Expertise HR Architect (Talent Management)" states that "The CoE HR Architect has the opportunity to contribute deep knowledge in an HR area and advise within a Center of Expertise (CoE)," will "anticipate customer needs by providing strategic service and developing programs in their areas of expertise to improve HR offerings, processes and to align with market changes and industry" and "design, develop and deploy new programs and own the direction in which HR programs in their areas of expertise develop," and has "the opportunity to identify areas of

---

[28] *Id.* at TSDR 15. This appears to be a foreign website. Foreign websites may have probative value on the meaning of a term in the United States under certain circumstances if it is likely that "U.S. consumers will encounter foreign websites in the field in question." *In re Well Living Lab. Inc.*, 2017 WL 2876809, at *4 n.10 (TTAB 2017). It is not clear that U.S. consumers would engage a talent management consulting company located abroad.

[29] December 17, 2022 Final Office Action at TSDR 27.

[30] *Id.* at TSDR 28.

improvement and develop new and leading programs for SHC."[31] The webpage displays listings for more than 60 other "Similar jobs in the area," none of which is for an "HR Architect" or "Architect" of any sort.[32]

Cited excerpts from the chubb.com website and another website discuss the availability of a job at Chubb called "HR Solutions Architect."[33] These pages describe what appears to be a job called "The Lead HR Systems / Solutions Architect – Human Resources," who the description states is "responsible for the enablement of Chubb's Human Resources Modernization journey across different regions, supporting the architecture design and governance, partnering with the delivery teams to ensure solutions being implemented are aligned with Chubb's architecture, security and technology standards and strategies."[34] The position involves design and development of "solution architecture" and requires "5+ years in solution architecture with at least 2 years working on Human Capital / Payroll solutions."[35]

Finally, a page on the accenture.com website lists a job description called "Solution Architect Manager (HR) – Canada" in Mississauga, Ontario that describes the position as the "Operations Solution Architecture Manager Talent Human Resources HR," a "client facing role that interprets and translates client requirement into a solution that can be configured from a standard set of offerings" and a "single point

---

[31] *Id.* at TSDR 51 (lensa.com).

[32] *Id.*

[33] *Id.* at TSDR 7, 50.

[34] *Id.* at TSDR 7.

[35] *Id.*

of contact."[36] Among other things, the position "[c]ollaborate[s] with the Service Architecture Products directors to plan and architect the overall delivery architecture and capabilities to support the service offerings."[37]

These record excerpts again use "architect" loosely to refer to various persons engaged in some manner in the human resources field with some form of "job architecture." These various references to an "architect" do not show that the word identifies a particular defined position in the human resources field, and do not show that the word ARCHITECT in Applicant's KORN FERRY ARCHITECT mark immediately describes any quality, characteristic, feature, function, purpose, or use of any of the services identified in the application.

The Board has frequently acknowledged the "fine line between suggestive marks and descriptive terms," and given that fine line, in this case we "must resolve any doubt in favor of finding the term [ARCHITECT] suggestive rather than descriptive." *In re Datapipe, Inc.*, 2014 WL 3543477, at *7 (TTAB 2014); *see also Zuma Array*, 2022 WL 3282655, at *5. We hold on this record that the Examining Attorney has not established that the word ARCHITECT in Applicant's KORN FERRY ARCHITECT mark is merely descriptive of any of the services identified in the application, and it thus need not be disclaimed.

**Decision**: The refusal to register is reversed.

---

[36] *Id.* at TSDR 9. This website is that of a Canadian company. As noted above, it has probative value on U.S. consumer perception of the meaning of the phrase "Solution Architect Manager" only if it likely to be encountered by U.S. consumers, which is not clear in this case.

[37] *Id.*